L. E. HALL, Trustee, v. C. E. QUINN, HENRY FARRIOR AND
EMMA BLOUNT.

(Filed 21 October, 1925.)

**1. Estates—Deeds and Conveyances—Condition Subsequent.**

Conditions subsequent that may defeat the title to lands granted are
not favored by the law, and will be strictly construed to effectuate the
intention of the parties as therein expressed, and ordinarily require a
defeasance clause or one of re-entry upon the breach of the condition.

**2. Same—Religious and Charitable Purposes.**

Where land is granted to trustees to hold for a religious denomination
in trust for the purposes of a school, it will not be declared a condition
subsequent, the breach of which will divest the title without other words
that will by proper construction evidence the intention of the parties that
it would be so regarded.

**3. Same—Mortgages.**

Where lands are conveyed to the trustees of a religious denomination
to be held for school purposes, without other indication that this was
a condition subsequent, the trustees or other successors having the
authority to do so, may execute a valid mortgage on the lands.

APPEAL by defendants from *Daniels, J.,* at July Term, 1925, of
DUPLIN, upon facts agreed.

In August, 1897, Henry Farrior and Amelia, his wife, and James
W. Blount and Maria, his wife, conveyed to the trustees of the James
Sprunt Institute a lot of land in Duplin County "to be used for the
purposes of education, and for no other purposes." The deed was duly
registered. The institution was located at Kenansville and was owned
and controlled by the Wilmington Presbytery. Henry Farrior and
James W. Blount were two of the trustees chosen by the Presbytery in
April, 1896. At the request of the trustees the institution was incor-
porated by the Legislature of 1901. Pri. Laws 1901, ch. 370. In sec. 4,
Henry Farrior is named as secretary and J. W. Blount as treasurer.
The latter continued to serve until his death in 1903. Sec. 3 is as
follows:

"The said corporation by its name and style aforesaid shall on
behalf of the Presbytery of Wilmington have, hold, use and enjoy,
succeed to all the estates, titles, properties and possessions now held
and possessed by the institution of the same name, and all rights, titles,
estates and property in and to the same is hereby vested both by law
and in equity in the same, and further, the said corporation shall have
power to acquire, hold, receive, take and possess on behalf of said
Presbytery of Wilmington all property, real, personal or mixed, dona-

tions, gifts, devises and bequests, and to use and enjoy, alien, exchange, invest, convert and reinvest all of its property and assets in as full and ample manner as other institutions of the State similarly chartered, and in no greater degree."

On the first day of August, 1906, by resolutions duly and properly passed by its trustees and by resolutions duly passed by the Wilmington Presbytery authorizing said trustees and the said corporation to execute a mortgage, all of which is admitted to be in proper and regular form, the James Sprunt Institute executed a deed of trust to H. F. Pierce, trustee, to secure certain bonds therein described, which said deed of trust is registered in Book 95, p. 565, of the office of the Register of Deeds of Duplin County, and the money secured by said bonds was used for school purposes and for no other purpose.

Dr. James W. Blount, Sr., died during the year 1903, prior to the execution of the mortgage described in paragraph 4. But Henry Farrior was living and as a trustee voted for the resolution approving the mortgaging of the property, and purchased some of the bonds secured by said mortgage.

Default was made in the payment of said bonds secured by said deed of trust, and the bondholders demanded of the trustees the foreclosure of the said deed of trust, and the said trustees offered the said property described in said deed of trust for sale to the highest bidder for cash at public auction at the courthouse door in Duplin County on Monday, 2 June, 1919, at 12 o'clock, noon, and Jas. J. Bowden became the last and highest bidder for said property at the price of $5,000, and he assigned his bid to L. E. Hall, trustee, and plaintiff herein paid the purchase price, and said H. F. Pierce thereupon executed a deed to the said L. E. Hall, trustee, conveying the land and certain personal property.

Thereafter on 17 September, 1923, L. E. Hall, trustee for the Wilmington Presbytery and for the use of Grove Institute, which was controlled by the Presbytery, authorized L. E. Hall to make an agreement with C. E. Quinn by which Quinn, having paid $50 should pay $9,950 more at his option—it being agreed that even if he should exercise his option he should not be required to pay the purchase price unless the title should be accepted as good or so determined by a court of competent jurisdiction. On 24 January, 1924, L. E. Hall, trustee, tendered to Quinn a deed sufficient in form to convey the property and Quinn declined to accept it and pay the purchase money.

The said property has not been used by the Wilmington Presbytery for educational purposes since the scholastic year of 1922 and 1923, and in the event of a sale thereof, as contemplated herein, the prop-

erty will pass into private hands to be used for private purposes, with no guarantee that it will be used for educational purposes.

Judge Daniels was of opinion that the deed tendered by the plaintiff to Quinn was sufficient to convey a good and indefeasible title in fee, free from all trusts and equities, and gave judgment decreeing that the contract of purchase be specifically performed and that the defendant upon the plaintiff's tender of the deed pay the remainder of the purchase price, which is $9,950, and the costs. The defendants excepted and appealed.

*Stevens, Beasley & Stevens for plaintiff.*
*H. D. Williams, F. E. Wallace and R. D. Johnson for defendants.*

ADAMS, J. It is necessary to keep in mind certain clauses in the deed executed in 1897 by Henry Farrior and James W. Blount to the trustees of the James Sprunt Institute. In the premises it is said that the grantors desired to establish and provide for this institution, which was a high school in the town of Kenansville, and that the Wilmington Presbytery had elected trustees by whom it was to be managed and controlled. Following the premises is the clause of conveyance to the "trustees and their successors in trust for the Wilmington Presbytery to be used for the purposes of education." And then the habendum—"to the said trustees, their successors and assigns in trust for the only use and benefit of the Wilmington Presbytery forever, and to be used for the purposes of education and for no other purposes."

The initial question relates to the quality of the estate described in this conveyance. The plaintiff contends that the deed passes to the trustees a fee simple, with the usual covenants of warranty, while the defendants contend that it conveys an estate in trust defeasible upon breach of a condition subsequent appearing upon the face of the instrument.

An estate on condition expressed in the grant itself is where an estate is granted, either in fee simple or otherwise, with an express qualification annexed, whereby the estate granted shall either commence, be enlarged, or be defeated, upon performance or breach of such qualification or condition; and a condition subsequent operates upon an estate already created and vested, rendering it liable to be defeated if the condition is broken. 2 Bl., 154. "Among the forms of expression which imply a condition in a grant," says Washburn, "the writers give the following: 'on condition'—'provided always'—'if it shall so happen'—or 'so that he, the grantee, pay, etc., within a specified time'; and grants made upon any of these terms vest a conditional estate in

the grantee. And it is said other words make a condition if there be added a conclusion with a clause of re-entry, or without such clause, if they declare that, if the feofee does or does not do such an act, his estate shall cease or be void." 2 Wash. Real Prop., 5 ed., 3.

The deed to the trustees contains none of these "forms of expression"; no clause of re-entry; no forfeiture of the estate upon condition broken. *Brittain v. Taylor,* 168 N. C., 271; *Church v. Young,* 130 N. C., 8. So whether it includes a condition subsequent depends upon the intention of the parties as shown by a proper construction of the language used. "Conditions subsequent are not favored by the law, and are construed strictly, because they tend to destroy estates, and the rigid execution of them is a species of *summum jus,* and in many cases, hardly reconcilable with conscience." 4 Kent's Com. (12 ed. 129); *Church v. Bragaw,* 144 N. C., 126; *Hinton v. Vinson,* 180 N. C., 393. A clause in a deed will not be construed as a condition subsequent unless it expresses in apt and appropriate language the intention of the parties to this effect (*Braddy v. Elliott,* 146 N. C., 578) and a mere statement of the purpose for which the property is to be used is not sufficient to create such condition. *Hunter v. Murfee,* 126 Ala., 123; *Fitzgerald v. Modoc County,* 44 L. R. A. (N. S.), (Cal.), 1229; *Wright v. Board of Education,* 152 S. W., 543; *Forman v. Safe & Trust Co.,* 80 At. (Md.), 298; *Brown v. Caldwell,* 48 A. R. (W. V.), 376; *Highbee v. Rodeman,* 28 N. E. (Ind.), 442; *Raley v. Umatilla County,* 3 A. S. R., 142. In *Rawson v. School District,* 7 Allen, 125, *Chief Justice Bigelow,* in a discussion of the question, made use of the following language, which we may adopt as applicable in the present case: "We believe there is no authoritative sanction for the doctrine that a deed is to be construed as a grant on a condition subsequent solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used, where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature general and public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled. If it be asked whether the law will give any force to the words in a deed which declare that the grant is made for a specific purpose or to accomplish a particular object, the answer is, that they may, if properly expressed, create a confidence or trust, or amount to a covenant or agreement on the part of the grantee. Thus it is said in *Duke of Norfolk's case, Dyer,* 138 b, that the words *ea intentione* do not make a condition, but a confidence and trust: See, also, *Parish v. Whitney,* 3 Gray, 516, and *Newell v. Hill,* 2 Met., 180, and cases cited. But whether this be so or not, the absence of any

right or remedy in favor of the grantor under such a grant to enforce the appropriation of land to the specific purpose for which is was conveyed, will not, of itself, make that a condition which is not so framed as to warrant in law that interpretation. An estate cannot be made defeasible on a condition subsequent by construction founded on an argument *ab inconvenienti* only, or on considerations of supposed hardship or want of equity."

It is apparent, we think, that the grantors in the deed of 1897 did not intend to make a conveyance on condition subsequent. They and others, as corporators, procured the passage of an act incorporating the institute, and authorizing it to use and enjoy, alien, exchange, invest, convert, and reinvest all its property and assets in like manner with other institutions similarly chartered (*Page v. Covington*, 187 N. C., 621), and afterwards they brought about the execution of the mortgage for the benefit of the school and for the purpose they had in mind. In our opinion the deed conveyed to the trustees an estate in fee; and as there is no question of alleged rights arising out of a breach of covenant this subject need not be discussed.

The judgment is