F. M. SHANNONHOUSE, JR., ADMINISTRATOR, v. J. K. WOLFE.

(Filed 19 May, 1926.)

**1. Trusts—Deeds and Conveyances—Conditions Subsequent—Charitable Trusts.**

A deed to lands sufficient to create a trust therein for designated purposes, will not be construed as upon condition subsequent, in the absence of a clause of forfeiture.

**2. Trusts—Courts—Equity.**

While equity may decree a sale of lands conveyed in trust for certain designated purposes, in order to preserve the estate therefor, it will not do so with express or clearly implied powers in the instrument when its effect will be to defeat the purposes of the trust, as gathered from the terms of the deed creating it.

**3. Same—Trustees—Power of Sale—Mortgage—Foreclosure—Purchaser —Title—Deeds and Conveyances.**

Where a deed to lands to trustees clearly creates a charitable trust therein for designated purposes, and confers on them no power of sale except by the word "dispose" thereof, this word, construed with the other words expressing the trust, does not confer upon the trustees the power to mortgage the entire subject of the trust, and thus defeat its object, and the purchaser at the mortgage sale can acquire no title. Cases wherein an estoppel has been created, designated by *Brogden, J.*

**4. Trusts—Deeds and Conveyances.**

A deed to lands is sufficient to create a trust therein when the words are adequate, the subject is definite, the subject-matter defined, and the beneficiaries designated.

CLARKSON, J., did not sit.

CONTROVERSY without action before *Harding, J.,* at March Term, 1926, of MECKLENBURG.

On 22 January, 1920, J. K. Wolfe executed and delivered the following deed:

STATE OF NORTH CAROLINA—COUNTY OF MECKLENBURG.

This deed, made and entered into this 22 January, 1920, by and between J. K. Wolfe and wife, Julia W. Wolfe, of the county of Mecklenburg and State of North Carolina, parties of the first part; Mrs. Beunah E. Creswell, Mrs. Mary B. Hunter, Mrs. Jennie G. Kirkpatrick, Mrs. Mattie E. Washam, H. G. Ashcraft, W. F. Graham, and B. J. Summerow, all of the county of Mecklenburg, State of North Carolina, parties of the second part, witnesseth:

That the said parties of the first part, in consideration of $1 to the said parties of the first part paid by the parties of the second part, the

receipt of which is hereby acknowledged, have bargained and sold, and by these presents do grant, bargain, sell and convey unto the said parties of the second part and to their successors, all that certain lot or parcel of land, situate, lying and, being in Charlotte Township, Mecklenburg County, State of North Carolina, and more particularly described as follows:

Located on the west side of the Park Road, commencing at a stake in the center of said road 270.6 feet from H. B. Hunter's corner, and runs thence south 75 degrees, 45 minutes west 480 feet to a stake; thence north 14 west 210 feet to a stake; thence north 75 degrees and 45 minutes east 480 feet to a stake in the center of said Park Road; and thence south 14 degrees east 210 feet with the center of said road to the beginning corner, and being parts of lots 6 and 7, as appears on the map of J. K. Wolfe's property duly recorded in the office of the register of deeds for Mecklenburg County in Book 230, pages 154 and 155.

To have and to hold the said parcel of land, and all right, privileges and easements thereunto in anywise appertaining, unto the said parties of the second part aforementioned and to their successors chosen as hereinafter specified, in trust and confidence, nevertheless that the said parties of the second part and their successors shall hold, use, occupy and enjoy the same for the purpose of establishing, maintaining and carrying on as a community building, buildings and grounds for the benefit of persons of the white race owning land or living within the community lying between the present southerly limits of the city of Charlotte on the north and including the J. Watt Kirkpatrick farm or homeplace on the south, and such lands and white persons living to the east and to the west of the said Park Road as may be determined from time to time by the said parties of the second part, under such rules and regulations as may be established for the government thereof by the said parties of the second part and their successors.

And the said parties of the second part and their successors may, in addition to the uses hereunto before provided, use the said grounds and buildings, or permit the same to be used for school purposes for persons of the white race under rules established by the said parties of the second part: *provided, however,* that such use for school purposes shall not deprive the white persons living in said community from the reasonable use of said premises and building for community purposes under the rules established for the maintenance and operation thereof.

And the following conditions are hereby made a part of this indenture, viz.: (1) The said premises shall be called "The Park Road Community House"; (2) the control, government and entire management of and responsibility for the said community house shall be vested in the aforesaid parties of the second part and their successors, who shall be persons

of the white race living in the said community and entitled to the use and enjoyment of the said community house; (3) the said parties of the second part or their successors shall have entire control of said property and premises for the purposes hereinbefore stated, and they shall also have entire control, disposal and management of any and all property whether real or personal, which shall at any time be given or conveyed to the said parties of the second part for the said community house, or of the income or profits of such money or property as may be given for the endowment or furtherance of any of the activities of the said community house; (4) in case of death or resignation of any of the aforesaid parties of the second part, such vacancy or vacancies shall be filled by election or appointment of the remaining parties, nominations of persons for such vacancies to be posted or advertised in some conspicuous place at least 30 days before election or appointment; (5) the said parties of the second part and their successors may elect or appoint such officers and committees as in their judgment may be necessary; provided, that they shall elect or appoint a secretary, one of whose duties shall be to keep proper minutes and records of all proceedings, vacancies and elections; (6) if at any time it shall become impossible or impracticable to carry on the trust hereby created according to the true intent and purpose thereof, then the said premises shall be used for public playgrounds or recreation grounds for the white persons living in the said community until such time as the parties of the second part or their successors may find it possible and to resume the use of said premises for the purposes herein stated.

In witness of all which the said J. K. Wolfe and his wife, Julia E. Wolfe, parties of the first part, have hereunto set their hands and seals the day and year first above written.

This deed was duly recorded 24 January, 1920, and at the time of recording thereof the land described was vacant and unimproved. Thereafter, 8 April, 1921, for the purpose of securing funds in part with which to erect a building on the land, the trustees borrowed from B. J. Summerow the sum of one thousand dollars and executed and delivered a deed of trust to the plaintiff's intestate as trustee for said Summerow, securing said money, said deed of trust being duly recorded in April, 1921. The deed of trust contained the usual power of sale in default of payment of principal or interest on said loan. Default having occurred in the payment of the indebtedness secured by said deed of trust, the plaintiff, as administrator of the trustee named in the deed of trust, sold the land at public auction in accordance with the terms of said deed of trust, at which sale the defendant became the last and highest bidder for the sum of four thousand dollars. The sale was duly reported and no advanced bid was placed upon the purchase price within

the time limited by law. Plaintiff thereupon tendered a deed to the defendant and demanded the purchase money. The defendant declined to accept the deed upon the ground that the deed would not convey to him a fee-simple title to the lands therein described, for the reason that the trustees had no power to execute a deed of trust or mortgage upon the property. It is admitted that the purchase price offered by the defendant is fair and reasonable.

Upon the record, as presented, Judge W. F. Harding held that the deed made by the plaintiff and thereafter tendered the defendant did not convey an indefeasible fee-simple title to the land therein described, and further, that the defendant was not required to accept said deed or to pay said purchase price.

From the judgment so rendered the plaintiff appealed.

*Carswell & Ervin for plaintiff.*
*Pharr, Bell & Pharr for defendant.*

BROGDEN, J. The determinative question is this: Did the trustees named in the deed have the power to execute a mortgage or deed of trust upon the property, and, by sale thereunder, convey a fee-simple title?

The deed does not create an estate on condition subsequent, for the reason that there is no clause of forfeiture, reverter or reëntry and other controlling indicia of such an estate. *Hall v. Quinn,* 190 N. C., 326.

However, the deed does create a trust in favor of the designated beneficiaries because the essential elements of a valid trust concur, to wit: (a) Sufficient words to create it; (b) a definite subject-matter; (c) an ascertained object; (d) designated beneficiaries. *Witherington v. Herring,* 140 N. C., 497; *Thomas v. Clay,* 187 N. C., 778.

An examination of the deed discloses two dominant purposes, to wit: (1) That said land should be used for the purpose of establishing, maintaining and carrying on as a community building, buildings and grounds for the benefit of white persons in the area designated. (2) That if it were impracticable or impossible to carry on the community building idea, the land should be used "for public playgrounds or recreation grounds" for the beneficiaries designated in the deed. In order to execute these purposes it therefore becomes necessary to ascertain the extent of the power delegated by the deed to the trustees. This power is contained in the following words: (a) Hold, use, occupy and receive the same for the purpose of establishing, maintaining and carrying on as a community building, buildings and grounds, etc.; (b) "shall have entire control of said property and premises for the purposes hereinbefore stated"; and (c) "they shall also have entire control, disposal and management of any and all property whether real or personal, which shall at any time be given or conveyed to the said parties of the second part

for the said community house or of the income or profits or *furtherance
of any of the activities of said community house.*"

The vital point raised by this language is whether or not the words
used are sufficient to authorize the execution of a mortgage upon the
property for the purpose of building a house thereon.

It must be conceded that the only language importing the power to
mortgage would be the words "entire control, disposal and manage-
ment"; and it must also be conceded that of these words "disposal" is the
broadest and most comprehensive. The various definitions and shades
of the meaning of the word "disposal" or its equivalent "disposed of"
is set out in *Page v. Covington,* 187 N. C., 621. In that case it was
held that the words "disposed of," construed in the setting in which they
occurred, indicated sufficient intention on the part of the donor that a
portion of the property should be sold and the proceeds derived there-
from used in preserving the trust; and it will be further noted that the
power of sale was restricted to a portion of the trust property, and that,
in addition, the beneficiaries of the trust authorized the sale.

Sales of property impressed with a trust for charitable uses have been
a fruitful source of litigation. The following principles relating to
charitable trusts are deducible from the authorities. Sales may be made:
(1) When the instrument creating the trust delegates the express power
of sale; (2) if no power of sale is given in the trust instrument, but a
sale of a portion of the property is necessary to preserve the trust.
*College v. Riddle,* 165 N. C., 211; *Page v. Covington,* 187 N. C., 621.
(3) If no power of sale is given, the trustees and beneficiaries, if capa-
ble of doing so, may dispose of the property and hold and use the pro-
ceeds for carrying out the dominant purposes of the trust according to
its terms. *Hall v. Quinn,* 190 N. C., 326; *Page v. Covington,* 187
N. C., 621. (4) If the power of sale is prohibited in the trust instru-
ment, but, if at the same time a sale of the trust property is indispen-
sable to the preservation of the interests of the parties in the subject-
matter of the trust. "We think it is well settled that a court of equity,
if it has jurisdiction in a given cause, cannot be deemed lacking in
power to order the sale of real estate which is the subject of a trust, on
the ground, alone, that the limitations of the instrument creating the
trust expressly deny the power of alienation. It is true, the exercise of
that power can only be justified by some exigency which makes the
action of the court, in a sense, indispensable to the preservation of the
interests of the parties in the subject-matter of the trust, or, possibly,
in case of some other necessity of the most urgent character." *Trust
Co. v. Nicholson,* 162 N. C., 257; *St. James v. Bagley,* 138 N. C., 384;
*Church v. Bragaw,* 144 N. C., 126; *Church v. Ange,* 161 N. C., 314;
*College v. Riddle,* 165 N. C., 211; *Middleton v. Rigsbee,* 179 N. C., 440.

However, the mere naked power of sale implied in the word "disposal," or, for that matter, language of like import, does not necessarily imply or delegate power to mortgage. "A sale of property presumably brings its full value. A mortgage of property presumably brings but a part of its value, and yet may result, by foreclosure, in the loss of the rest." *O'Brien v. Flint,* 74 Conn., 502.

A clear expression of the proper construction of power to mortgage occurs in the case of *Hamilton v. Hamilton,* 149 Iowa, 329, and is as follows: "Question is further raised whether, under the power given in the will, the plaintiff may mortgage the property. That a mere naked power to sell given to an agent or attorney or to the trustee of any ordinary trust does not include the power to mortgage is well settled by the weight of authority. In such case the power is to be strictly construed and will not be extended to cover an act not clearly within the terms of the instrument by which it was created; but a different rule has often been applied where a testamentary power has been given, not for the benefit or profit of the donor, but in the furtherance of some benefit which the donor confers upon the donee. The language creating such a power is to be liberally construed to promote the purpose or intent of its creation, and, if the power to sell is amplified by other words of broader or more general meaning, and the circumstances under which the gift is made be not such as to forbid that construction, the authority to mortgage for the purpose expressed in the writing may be inferred."

In the *Hamilton case* the language of the will under construction was "full power to sell, transfer and dispose of the same or as much thereof as may from time to time be needed for his support and maintenance during his said lifetime." It is further pointed out that the real estate devised in the will was encumbered by an outstanding mortgage. *Price v. Courtney,* 87 Mo., 387; *Hoyt v. Jaques,* 129 Mass., 286; *Parkhurst v. Trumbull,* 130 Mich., 408; *Bloomer v. Waldron,* 3 Hill (N. Y.), 364; (*Aaron Burr case*); *Arlington State Bank v. Paulsen,* 57 Neb., 717; *Stokes v. Kennedy,* 58 Miss.; 614; *Hicks v. Ward,* 107 N. C., 392.

If the mortgage in the case now under consideration can be upheld, its validity must rest upon principles announced in *Hall v. Quinn, supra.* An analysis of the case of *Hall v. Quinn* will disclose: (1) That the donors of the property procured the incorporation of the donee by the Legislature, and the legislative act, incorporating the donee, conferred and delegated full, ample and comprehensive powers "to use and enjoy, alien, exchange, invest, convert and reinvest all of its property and assets in as full and ample manner as other institutions of the State similarly chartered." Having participated in procuring this charter, the donors, therefore, were estopped, and could not question the exercise

of the power conferred, and the power to mortgage is fully conferred by the provisions of the charter.

(2) The beneficiary in the deed of gift duly authorized the execution of the mortgage. The result was that there was no person who could raise the question or challenge the validity of the mortgage so given. "The parties who can maintain a suit to enforce a trust must be either a *cestui que trust* or a trustee, or must sue in right of one of these or must have some legal interest in the subject-matter of the trust either granted or reserved, or by reverter." *Shields v. Harris,* 190 N. C., 520.

It is obvious, therefore, that the principle announced in *Hall v. Quinn* is not applicable to the facts here.

The language of the deed under consideration, the weight of authority, and the clear logic of the principles involved, compel the conclusion that the mortgage in this particular case was not properly authorized, and therefore invalid. It necessarily follows that a sale thereunder could not vest an indefeasible title. The judgment must be

Affirmed.

CLARKSON, J., did not sit.