LYN BOND, J. V. COBB, W. G. CLARK, W. C. HARGROVE, CHAIRMEN OF
THE BOARD OF COMMISSIONERS OF EDGECOMBE COUNTY, THAD HUSSEY,
C. A. JOHNSON, R. B. JOSEY, J. T. LAWRENCE, B. C. MAYO, PEM-
BROKE NASH, AND R. B. PETERS, JR., MAYOR OF THE TOWN OF TAR-
BORO, TRUSTEES UNDER DEED FROM EDGECOMBE HOSPITAL AND
BENEVOLENT ASSOCIATION, INC., OPERATING AS EDGECOMBE GEN-
ERAL HOSPITAL, PETITIONERS, v. TOWN OF TARBORO, ON BEHALF
OF ITSELF AND ALL ITS CITIZENS, INCLUDING THE SICK AND INDIGENT AND
OTHERS REQUIRING MEDICAL OR SURGICAL AID, ET AL., DEFENDANTS.

(Filed 20 March, 1940.)

1. **Trusts § 6b—Courts of equity may authorize trustees of charitable trust
to mortgage property when necessary to preserve the trust.**

   Courts of equity have the power to authorize the trustees of a charita-
   ble trust to mortgage the trust property when, by reason of changed
   conditions, such action is necessary to effectuate the purpose of the trust
   and preserve the trust property, and prevent depreciation which would
   eventually render the property useless and thus result in the loss of the
   benevolent undertaking.

2. **Same—Facts of this case held to sustain judgment authorizing trustees
to mortgage property of charitable trust.**

   The facts found by the court were to the effect that plaintiffs are the
   trustees of a charitable trust whose objective is the maintenance and
   operation of a hospital for the benefit of the indigent sick of the locality,
   that one of the buildings, which was originally an old residence con-
   verted into a hospital at the inception of the trust, had become so anti-
   quated that renovation into a modern, adequate hospital was impracti-
   cal, that it had become a fire hazard and that if the trustees were not
   authorized to place a lien on all of the property of the trust to obtain
   money to make improvements in the construction of a new and modern
   hospital building, the old building would become useless and that if it
   were not replaced the object of the trust could not be adequately carried
   out, and that neither the deed which created the original trust nor any
   of the *mesne* conveyances contained any restrictions upon the successive
   trustees against alienation or encumbrancing the trust property, and that
   the revenue from the proposed new building would probably be sufficient
   to carry the proposed loan. *Held:* The findings are sufficient to sustain
   the judgment of the court authorizing the trustees to execute the pro-
   posed mortgage in order to preserve the trust.

   WINBORNE, J., dissenting.

   STACY, C. J., and BARNHILL, J., concur in dissent.

APPEAL by defendants from *Burgwyn, Special Judge,* at September
Term, 1939, of EDGECOMBE. Affirmed.

This is a proceeding brought by the trustees of a charitable trust,
who operate a hospital in Tarboro, N. C., under the name and style of
Edgecombe General Hospital, to secure court authority to borrow from
the Jefferson Standard Life Insurance Company the sum of $40,000, on

10—217

certain terms, to execute a note or notes therefor, and to secure the payment of the note or notes by the execution and delivery of a mortgage or deed of trust on the hospital property. The purpose of the loan is to make certain additions and improvements to the present plant, particularly by the construction of a new building on the site now occupied by what is designated as the Nurses' Home, and also by the erection of a new building to be used as a Nurses' Home. The details of the plan are set forth in the findings of fact of the court below. The present hospital was first established in 1901 and has been operated continuously since that time by various trustees, individual and corporate. In 1928, the Edgecombe Hospital and Benevolent Association, Inc., conveyed the property to the present trustees, by deed dated 6 June, 1938, recorded in Book 288, page 300, Edgecombe County registry, which conveyed the property to the present trustees, as "trustees for the use and benefit of the citizens of the town of Tarboro, of the county of Edgecombe, and of the adjacent counties." Except for the conveying clause, description of the property and the attestation, the deed contained only the following, which is found in the *habendum* clause: "To have and to hold the aforesaid real and personal property, together with all the privileges and appurtenances thereunto belonging or in anywise appertaining unto the said parties of the second part, their successors and assigns, for the purpose of owning, equipping, managing, maintaining and supporting a hospital for the care and treatment of the sick and the indigent or any others requiring medical or surgical aid, the dispensing of charity, distribution of funds for charitable and benevolent purposes and for such other and further acts as may be necessary to carry out the purposes aforesaid."

The plaintiffs set forth, and it was found by the court, that the present plant, especially the building designated as the Nurses' Home (which contains other departments as well as room for the nurses) is not safe for use, constitutes a fire hazard, and is not in condition to be so repaired as to render it reasonably adapted for further use. The plaintiffs have secured from the Jefferson Standard Life Insurance Company a commitment to make a loan of $40,000, to be secured by mortgage or deed of trust, and the plaintiffs propose to rebuild the plant as fully set forth. On the findings of fact the court below adjudged and decreed that the plaintiffs (trustees) be authorized to secure the proposed loan and execute necessary note or notes and a mortgage or deed of trust on the property. To this judgment the defendants excepted, assigned error and appealed to the Supreme Court. This exception and assignment of error and other necessary facts will be set forth in the opinion.

*Gilliam & Bond for plaintiffs.*
*C. H. Leggett for defendants.*

CLARKSON, J.  The questions involved in this controversy are: (1) Has the court, in the exercise of its equity jurisdiction, the power to authorize the trustees of a charitable trust to mortgage the trust property?  (2) If so, do the facts in the case justify the exercise of that power?  Under the facts and circumstances of this case, we think both the questions must be answered in the affirmative.

The findings of facts by the court below are set out in full in the record and we think are plenary to support the judgment.  It is found that "Neither the deed which created the original trust nor any of the *mesne* conveyances contain any restrictions upon the power of the grantee or grantees therein, to alienate or encumber the trust property."

This proceeding was brought for the purpose of obtaining court authority to borrow an amount not exceeding $40,000 from the Jefferson Standard Life Insurance Company and to execute a note or notes therefor, together with a mortgage or deed of trust on the property described in the petition.  The total investment at this time of the Edgecombe General Hospital amounts to $60,000.  In the findings of facts is the following: "The present plant of said institution consists of (1) the original brick building in which the hospital began operations in the year 1901, it being then a residence building of more than fifteen years of age; this building houses the home for nurses, the dining room, the kitchen, the deep-therapy X-ray department, and the heating plant; (2) a brick building connected with the above building which was constructed in the year 1916, at a cost of about $15,000, with funds raised by voluntary donations; this building contains thirteen private hospital rooms, four wards, two operating rooms, X-ray room, offices, etc.; (3) a brick building in the rear of the Nurses' Home, constructed in the year 1920, at a cost of about $15,000, with funds also raised by voluntary donations; this building contains rooms for colored people and is connected with both of the above-mentioned buildings.  The building referred to above as the Nurses' Home, being old and dilapidated, is dangerous and unsafe, some of the outside walls are cracked from bottom to top in several places, the interior woodwork has rotted in many places, the electric wiring, the plumbing and heating pipes, connections and fixtures are worn out, and there exists a serious fire hazard on account of such conditions.  This structure is unsafe and unfit for use in its present condition and on account of its age and plan of construction it is impracticable and economically inadvisable to remodel it for use as a part of a modern and well appointed hospital; and without this building or one erected in its place the petitioners will be unable to discharge the duties imposed upon them in a proper, reasonable and adequate manner. Because of the imperative need of replacing the aforesaid portion of the trust property and the further need of improving generally so as to

maintain it as an up-to-date hospital for the practice of modern medicine and surgery and equipped to provide and furnish the kind and measure of service contemplated by the trust have worked out and submitted to the court a plan of improvement and enlargement hereinafter set out in detail, which the court finds to be based upon sound economic considerations and one designed to accomplish the end in view and also to widen and enlarge the scope and field of petitioners' operations; as a part of this plan the petitioners on 9 July, 1938, acquired title to a parcel of land adjoining the parcel of land above referred to and on which the present hospital buildings are located, which was conveyed to the petitioners by deed in Book 366, page 368, Edgecombe County registry."

The details of the improvement and enlargement are set forth and the annual rental is found to be sufficient to operate the hospital and carry the loan. The entire buildings and furniture, fixtures and equipment to cost approximately $40,000.

The court below further found: "That the consummation of the above loan will be to the great, lasting and material advantage of all parties concerned, including the 'sick and indigent, or all others requiring medical or surgical aid' in Edgecombe and adjacent counties; and that on the other hand, if authority to consummate said loan is withheld and petitioners are prevented from carrying out the proposed plan of improvement and enlargement the benefits accruing from the original trust property and subsequent donations will be presently materially limited and in the course of time entirely lost. The court further finds that in all reasonable probability the additional income to be derived from rental of office space and new private rooms will enable petitioners to meet the payments of interest and principal of the proposed loan and thereby eventually relieve the trust property of the proposed encumbrance."

In other words, the present buildings will decay and the human undertaking be lost to Edgecombe County and the surrounding section if the trustees are not given the power to place a lien on the property, the money to be spent in improvements. Of course, mortgaging is a hazardous venture, but few homes, industrial plants, railroads, or going concerns, are erected without resorting to a mortgage or deed of trust. Building and Loan Associations, mortgage corporations, insurance companies and other like concerns, as well as State and Federal agencies, are functioning for the purpose of loaning by way of mortgage and deed of trust. If we feared to plant seed-corn or wheat, what would the harvest be? In this case the object is to take better care of the sick, indigent and afflicted. Lord Bacon, in his celebrated Essay, "Of Goodness and Goodness of Nature," says: "Goodness answers to the theological virtue charity, and admits no excess but error: the desire of power in excess caused the angels to fall; the desire of knowledge in

excess caused man to fall; but *in charity there is no excess;* neither can angel or man come into danger by it."

The trustees are unanimous in their request, the defendants in the answer admit, or do not deny, the plaintiffs' allegations. Further in the answer it is said: "The trustees have no right in law or equity to create debts against the property, and particularly have no such right to subject the trust property to liens. . . . That these defendants, while not questioning the good faith and purpose of the petitioners, deem it their duty on behalf of themselves and all other citizens of Edgecombe County, including the sick and indigent and others requiring medical or surgical aid, to present to the court the reasonable positions and contentions of all beneficiaries of the trust, namely, (1) that the court is without jurisdiction to grant the prayer of the petition; and (2) assuming the jurisdiction of the court in the premises, the authority requested in the petition should not be granted."

The deed to plaintiffs, trustees, in the *habendum clause*—last words— says, "For such other and further acts as may be necessary to carry out the purposes aforesaid." The trustees, who are primarily interested in preserving the trust, say that what they want done is necessary to carry out the charitable purposes of the trust. Where there is a charitable trust and the need is imperative to save that which will be lost, as under the facts and circumstances of this case, we can see no reason why a court of equity could not or should not grant the request.

In *Holton v. Elliott,* 193 N. C., 708 (710), we find: "The power is not infrequently exercised where conditions change and circumstances arise which make the alienation of the property, in whole or in part, necessary or beneficial to the administration of charity. The principle is very clearly upheld in *Church v. Ange,* 161 N. C., 315, in which it is said: 'The language, the property "shall not be disposed of, sold or used in any other way or for other purpose than the one designated in this clause of my will," manifests an intention to effectuate the trust, and to permit a sale if the purpose declared, of providing a rectory, can be thereby promoted; but if this power to sell and reinvest in other land, suitable for a rectory, is not contemplated by the will, it is not forbidden, and under the statute, Revisal, sec. 2673 (N. C. Code, 1935 [Michie], sec. 3571), the plaintiffs can sell. If, however, this was doubtful, the sale in this case has the sanction of the Court, the courts of equity have long exercised the jurisdiction to sell property devised for charitable uses, where, on account of changed conditions, the charity would fail or its usefulness would be materially impaired without a sale. *Lockland v. Walker,* 52 N. W. (Mo.), 427; *Brown v. Baptist Society,* 9 R. I., 184; *Stanly v. Colt,* 72 U. S., 119; *Jones v. Habersham,* 107 U. S., 183. In the last case, the Court said of an express provision against alienation:

"It will not prevent a court of chancery from permitting, in case of necessity arising from unforeseen change of circumstances, the sale of the land and the application of the proceeds to the purpose of the trust. Tudor on Charitable Trusts (2 Ed.), 298; *Stanly v. Colt,* 5 Wall., 119, 169.'"

In Bogart on Trusts and Trustees, Vol. 4, p. 2238, part sec. 757, is the following: "The courts are particularly interested in preserving the trust assets so that the primary object of the trust can be accomplished, and to that end have in some cases implied the power to mortgage to avoid the sacrifice of trust property," citing authorities.

In Scott on Trusts (1939), Vol. 2, p. 839, part sec. 167, it is stated: "In cases of emergency in order to prevent a sacrifice of the trust property the court may permit the trustee to mortgage or pledge the property, even though he may be forbidden by the terms of the trust to do so."

In American Law of Charities (Zollmann), speaking to the subject, we find, sec. 580, p. 405: "Under a gift to trustees for a hospital, the trustees have been authorized by the court to give a mortgage on the property in order to raise the money necessary for its best interest."

To the same effect, to improve the property in order more fully to carry out the purposes of the trust—*Scott v. Mussafer,* 134 So., 857, 223 Ala., 153; *Christian v. Worsham,* 78 Va., 100; *Frith v. Cameron,* L. R., 12 Eq., 169. The right is given a court of equity to permit the trustee to mortgage the trust estate.

In *Curtiss v. Brown,* 29 Ill., 201 (230), it is written: "Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. . . . From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery."

In *Reynolds v. Reynolds,* 208 N. C., 578 (631), speaking to the subject, it is said: "Frequently, on changed conditions, equity steps in and gives relief."

For the reasons given, the judgment of the court below is

Affirmed.

WINBORNE, J., dissenting: I am unable to follow through with the majority opinion. In the first place, the trustees of a charitable trust have only such powers as are conferred upon them expressly or impliedly by the terms of the trust, or, in some instances, by statute. They cannot

properly mortgage trust property unless a power to mortgage is so con-
ferred. Scott on Trusts, Vol. 3, sec. 380; *Shannonhouse v. Wolfe,*
191 N. C., 769, 133 S. E., 93.

In the *Shannonhouse case, supra,* where trustees of a charitable trust,
who were invested with neither express nor implied power to mortgage
same, had given a mortgage thereon to secure money borrowed and
expended in improving such property, this Court declared the mortgage
void.

In that case, after stating principles deducible from the authorities as
to when a sale may be made of property impressed with a trust for
charitable uses, *Brogden, J.,* speaking for the Court, said: " 'We think
it is well settled that a court of equity, if it has jurisdiction in a given
cause, cannot be deemed lacking in power to order the sale of real estate
which is the subject of a trust, on the ground, alone, that the limitations
of the instrument creating the trust expressly deny the power of aliena-
tion. It is true, the exercise of that power can only be justified by some
exigency which makes the action of the court, in a sense, indispensable
to the preservation of the interests of the parties in the subject matter
of the trust, or, possibly, in case of some other necessity of the most
urgent character.' *Trust Co. v. Nicholson,* 162 N. C., 257; *St. James
v. Bagley,* 138 N. C., 384; *Church v. Bragaw,* 144 N. C., 126; *Church v.
Ange,* 161 N. C., 314; *College v. Riddle,* 165 N. C., 211; *Middleton
v. Rigsbee,* 179 N. C., 440. However, the mere naked power of sale
implied in the word 'disposal,' or, for that matter, language of like
import, does not necessarily imply or delegate power to mortgage. 'A
sale of property presumably brings its full value. A mortgage of prop-
erty presumably brings but a part of its value, and yet may result, by
foreclosure, in the loss of the rest.' *O'Brien v. Flint,* 74 Conn., 502."

In Scott on Trusts, Vol. 2, p. 1037, in treatment on the subject of
administration of trusts in general, speaking of the power to mortgage,
the author said: "Whether the trustee has a power to mortgage trust
property depends primarily upon the manifestation of intention of the
settlor. We have seen that the same rule governs the existence of a
power of sale. Nevertheless, in the absence of controlling language in
the trust instrument it is easier to infer that the settlor intended to
confer a power of sale than that he intended to confer a power to mort-
gage. It is more likely that the settlor intended to permit the trustee to
sell trust property and hold the proceeds in trust or apply them to the
purposes of the trust than to permit him to subject the property to a
mortgage which might result in the sacrifice of the property. In the
case of a sale, if the sale is made at an adequate price, the estate loses
nothing, and there is merely a shifting of the trust property from one
form to another. In the case of a mortgage the estate may receive the

amount advanced, but that amount will ordinarily be much less than the value of the property mortgaged, and the trustee thereafter may be unable to redeem the mortgage and runs the risk that the property will be sold at an unfavorable time and for less than its value. The making of the mortgage subjects the trust to a risk which may be beyond the control of the trustee. The extent of the risk, of course, depends upon all the circumstances.

"At any rate, the placing of a mortgage upon the property, although it may be prudent enough as a business risk, ordinarily involves a risk, which ought not to be assumed in the administration of a trust, since the administration of a trust requires cautious and conservative management."

In the present case the power to mortgage is not given, expressly or impliedly, to the trustees. The extent of the power granted in the trust as originally set up in 1901 is that "if any change should be necessary to better effectuate the purpose, with power in said board of trustees, in their discretion to adopt the same." But in a later deed in the chain of title under which plaintiffs claim, after two other buildings had been erected on the trust lot with money derived from voluntary contributions, it is provided: "In case it shall hereafter at any time or for any reason become impracticable to maintain and operate such institution, then the party of the second part to have, hold and use said real and personal property for such other purposes and objects of a charitable or benevolent character as said party of the second part, by its board of trustees, may determine." Thus, an anticipation that in the course of time it might become impracticable to maintain and operate the hospital, is clearly indicated. This negatives any intention to authorize a mortgage.

On the other hand, the only statutory authority, in this State, empowering trustees to mortgage charitable trust property, relates to trustees of religious bodies. C. S., 3571.

Furthermore, where trustees of a charitable trust are not given the power, expressly or impliedly, by the terms of the trust, or by statute, whether a court of equity has the power to authorize such trustee to borrow money to preserve the trust and secure the same by a mortgage on the property has not been decided in this jurisdiction.

In *Wright v. McGee*, 206 N. C., 52, 173 S. E., 31, while this Court disposed of the appeal upon other grounds, *Connor, J.*, expressed the trend of thought on the subject in this manner: "We have been unable to find any case in which a court with equity jurisdiction has exercised such power. The power to authorize the sale of property impressed with a trust for charity, and the investment of the proceeds of the sale in other property to be held under the same, or like trust, does not

necessarily include the power to authorize a mortgage or deed of trust on the property, which may result in the loss of the property upon the foreclosure of the mortgage or deed of trust." See, also, *Raleigh v. Trustees*, 206 N. C., 485, 174 S. E., 278.

In this connection the majority opinion in this case cites no such decision.

But, be that as it may, decision on the question is not necessary to determination of this appeal.

Secondly, if it be conceded that the courts in the exercise of equity jurisdiction have the power to interpose and grant the power, where none is given, to trustees to mortgage property impressed with a charitable trust as security for borrowed money used or to be used in improvement of the trust estate, the facts in the present case do not justify the exercise of such power.

A more complete statement of the factual situation is necessary for clear understanding and proper consideration of the terms of the charitable trust and of the condition of the trust property with regard to the proposed improvement of the property and the enlargement of "the scope of the field of the operations" by means of borrowed money secured by mortgage on the entire estate, both real and personal.

These facts appear: Prior to 17 December, 1901, the purchase and equipment of the Pittman Hospital were made with funds contributed, as follows: By Miss Minerva Pittman as a memorial to Dr. W. J. Pittman, $2,000; by Robert M. and Sarah E. Bruce as a memorial to John T. Bruce, $5,117; by the Auxiliary Board of Health of Edgecombe County, $2,460; by Ladies' Hospital Aid Society of Tarboro, $1,000; by physicians (vaccination allowance), $500; by various voluntary contributions, about $500, agreement with respect to which is registered in Edgecombe County registry in Book 107, page 279, but which is not incorporated in the record on this appeal. The contributors agreed that the hospital be conveyed to a board of trustees composed of certain practicing physicians coming within descriptive qualifications set forth in the Articles of Incorporation, Constitution and By-Laws of the Auxiliary Board of Health of Edgecombe County with power to fill vacancies as therein declared. Pursuant thereto the Pamlico Insurance & Banking Company, by deed dated 17 December, 1901, in which the contributors joined in consideration of the matters therein set forth and $3,000 paid from funds contributed by the Bruces, conveyed to said board of trustees, naming them, the lots on St. Andrews Street in the town of Tarboro on which the Pittman Hospital was then situated. The deed contains the following provision: "And the Auxiliary Board of Health of Edgecombe County, a corporation, . . . Robert M. and Sarah E. Bruce, by their attorney, Geo. Howard, and Miss Minerva Pittman do hereby

affirm the modifications made by this deed of the 'agreement' aforesaid and waive all right to claim the return of any part of their contributions, their purpose being and they hereby declare their trust, that the said Board of Trustees use the property conveyed to them, in the interest of humanity to alleviate its suffering doing all reasonable charity work, by operating a hospital in perpetuity, and if any change should be necessary to better effectuate the purpose, with power in said Board of said Trustees, in their discretion to adopt the same."

Later the then board of trustees believing that control and management of said hospital and its affairs by a corporation would more certainly and quickly develop same, unanimously determined and resolved in meeting assembled, that the property control and management of said hospital should pass to a corporation "for the better effectuating and perpetuating its purposes." Pursuant thereto, and in pursuance of resolution duly made, the board of trustees procured a corporate charter for the Pittman Hospital Association, Incorporated, with "full power to hold all the property of said hospital and manage its affairs." Thereupon, on 4 May, 1903, the trustees then constituting said board conveyed to said corporation all the property conveyed to them as aforesaid, as well as "all other property of any kind and description held" by them, "to have and to hold . . . unto it and its successors in fee; to the end that said association manage and use the property conveyed to it in the interest of humanity, to alleviate its suffering, doing all reasonable charity work, and to develop and perpetuate said hospital."

At a meeting of the Pittman Hospital Association, held on 26 March, 1910, a resolution was passed "authorizing and directing the President and Secretary to rent or lease said hospital for a term of years, or if deemed advisable, desirable or considered that it would better effectuate the purposes of the Association, to deed in fee said hospital and all its appurtenances to the proper person; and . . . in accordance with said resolutions and after due and mature consideration . . . it was deemed advisable and so ordered that a deed in fee simple should be made to Dr. J. M. Baker, Trustee of the Bruce Fund." Pursuant thereto, on 6 April, 1910, a deed was executed by the Pittman Hospital Association to Julian M. Baker, trustee of the Bruce Fund, his heirs and assigns, conveying the hospital property "to have and to hold . . . together with all the privileges and appurtenances thereunto belonging, or in anywise appertaining unto him, . . . in fee simple forever."

By deed in fee dated 29 July, 1915, all of the property so conveyed to him, was conveyed by J. M. Baker, trustee of the Bruce Fund, to the Edgecombe Benevolent Association, Inc., which had theretofore been organized for the purpose of purchasing and operating same. The consideration therefor was the issuance and delivery to the grantor, J. M.

Baker, trustee of the Bruce Fund, of stock in said Edgecombe Benevolent Association of the par value of $12,500.

While the title to the said property was held by the Edgecombe Benevolent Association two brick buildings were constructed in connection with the original brick building, and added to the hospital plant. The first of these two was built in the year 1916, and the second in 1920, each at cost of $15,000 with funds raised by voluntary donations.

Afterwards, on 17 December, 1927, the Edgecombe Benevolent Association, Incorporated, executed a deed to the Edgecombe Hospital and Benevolent Association, Incorporated, its successors and assigns, conveying the Pittman Hospital property and all furniture, fixtures, equipment and apparatus then located in and used in the operation of said hospital, except certain property not owned by it: "To have and to hold  .  .  . together with all privileges and appurtenances thereunto belonging or in any wise appertaining, unto the party of the second part, its successors and assigns, in accordance with and under the limitations and provisions of the Articles of Incorporation of party of second part, that is to say, said party of the second part to have, hold and use said real estate and personal property for and in the operation of an institution for the care and treatment of sick and injured persons, and in case it shall hereafter at any time or for any reason become impracticable to maintain and operate such institution, then said party of the second part to have, hold and use said real and personal property for such other purposes and objects of a charitable or benevolent character as said party of the second part, by its Board of Trustees, may determine."

The Edgecombe Hospital and Benevolent Association, Incorporated, in deed dated 6 June, 1928, after asserting the provisions set forth in the *habendum* to the deed to it dated 17 December, 1927, and further reciting that: "The board of trustees or directors of the said Edgecombe Hospital and Benevolent Association, Incorporated, found it impracticable to maintain and operate said institution for the purposes aforesaid, and by duly authorized motions have consented, empowered and authorized its officers to convey by proper deed all of said real and personal property conveyed to it by the above mentioned deed to the hereinafter mentioned trustees," conveyed the said property to the plaintiffs in this action, their successors and assigns, "for the use and benefit of the citizens of the town of Tarboro, of the county of Edgecombe, and of the adjacent counties," "to have and to hold the aforesaid real and personal property together with all privileges and appurtenances thereunto belonging or in anywise appertaining unto the parties of the second part, their successors and assigns, for the purpose of owning, equipping, managing, maintaining and supporting a hospital for the care and treatment of the sick and the indigent or any others requiring medical or surgical aid, the

dispensing of charity, distribution of funds for charitable and benevolent purposes and for such other and further acts as may be necessary to carry out the purposes aforesaid."

As thus founded, dedicated, acquired and held, the trust estate, a charitable trust, originally known as the Pittman Hospital, now the Edgecombe General Hospital, as the record shows, is "as of today a hospital of fifty beds, having the approval of the American Hospital Association." It represents, as is alleged by plaintiffs and found as a fact by the court, an investment of $60,000.

Petitioners allege that the expense of maintenance and upkeep of the hospital has been met almost entirely from the patronage of pay patients, the Duke Endowment, the county of Edgecombe and the town of Tarboro, and that in spite of loyal support of most of the physicians, the public generally, and aid from other sources, they are unable to accumulate funds for these needed improvements.

What then do the petitioners propose to do? It is alleged that they "have conceived a plan . . . which, as they believe, is based upon sound economic consideration and will accomplish the end in view and prove advantageous to the beneficiaries in the trust, *as well as widen and enlarge the scope of the field of the operations."* As a part of this plan petitioners have acquired title to a lot on St. Patrick's Street, adjoining the original lot, by deed from W. W. Greene and others upon terms of trust in almost identical words to those used in the deed from the Edgecombe Hospital and Benevolent Association to plaintiffs.

It is further planned: (1) To replace the original brick building by the erection of a two-story brick building which will provide sixteen private rooms, offices for the hospital staff and space for the other purposes for which the said original building is now being used; (2) to erect on the recently acquired lot on St. Patrick Street a two-story brick building of 16 rooms to be used as a nurses' home. The proposed plan, including the cost of necessary furniture, fixtures and equipment, is approximately $40,000, all of which is to be borrowed, on terms "payable in 20 years, interest at 6 per cent, payable semiannually, with a 5 per cent semiannual curtailment of the principal." The loan is to be secured (1) by a first mortgage on all of the real estate, that is, the original lot and the recently acquired lot, and the improvements thereon; (2) by a "first chattel lien on the furniture, fixtures and equipment located on this property"; and (3) subject to the lender "being furnished with a satisfactory ten-year lease at $150 per month for the office space occupied by the doctors."

An agreement for a lease at such monthly rental has been entered into between plaintiffs and "physicians and surgeons constituting the staff of the hospital."

Plaintiffs further "believe and allege that the consummation of the above loan will be to the great, lasting and material advantage of all parties concerned, including the 'sick and indigent, or all others requiring medical or surgical aid' in Edgecombe and adjacent counties; that, if said loan is °consummated and the hospital modernized, enlarged and improved, as hereinbefore set forth, the class of persons known and designated as 'sick and indigent, or all others requiring medical or surgical aid' will receive more benefit from the trust; that the income of the institution will be greatly increased; that the Duke Endowment, which donated the sum of $3,861 for the year 1938, will continue to make similar donations, or increased donation in proportion to the increased facilities, and that the county of Edgecombe and the town of Tarboro will continue to make donations as in the past, and in addition your petitioners will receive an annual rental of $1,800 for the office space to be provided, as well as the added income of approximately $12,000 from the additional private rooms." . . . Plaintiffs "believe and allege," and the "court finds that in all reasonable *probability* the additional income to be derived from rental of office space and new private rooms will enable petitioners to meet the payments of interest and principal of the proposed loan and thereby eventually relieve the trust property of the proposed encumbrance."

Though the trust estate is "for the use and benefit of the citizens of Tarboro, of the county of Edgecombe and of the adjacent counties," the record is silent as to hospital facilities in adjacent counties, which may affect patronage of the hospital here involved.

Analyzing the situation: (1) The present plant meets the approval of the American Hospital Association. What the requirements are for such approval, the record does not disclose. It must mean something, and it may be assumed that there are standard requirements. If so, does not the fact of approval tend to negative such exigency or urgent necessity as calls for the intervention of a court of equity to supply the trustees with power to mortgage the trust estate to prevent it being destroyed or lost?

(2) Is the condition of the original building in the trust estate such exigency or urgent necessity as appeals to a court of equity for authority to encumber the estate to get funds with which to erect a building on other land held by the trustees under an independent source of title, though under similar terms?

(3) Do the terms of the proposed loan and the probability of income from amortizing it offer such assurance as justifies a court of equity interposing to vest the trustees with the power to mortgage? A careful consideration raises grave doubt. A "5 per cent semiannual curtailment of principal" amounts to $4,000 per year. By adding to this interest

on the loan, more than $6,000 will have to be raised the first year, and the whole in 10 years. But if the curtailment is to be only five per cent annually, that is, $2,000, more than $4,000 will be required the first year. In either event only the amount of interest to mature each year will be reduced proportionate to the prior curtailment of the principal.

On the other hand, the only sure annual income is $1,800, the rental of the offices to the doctors. That the increased contribution expected from the Duke Endowment relates to charitable beds is a matter of common knowledge. Though there will be sixteen additional private rooms, charitable beds are not contemplated. What the increased income will be will depend upon patronage, which is necessarily a matter of speculation. If, however, the additional space is to be devoted to the charitable purposes of the trust, there is no sound basis for anticipating the alleged contemplated revenue. If such additional income results the trustees will have engaged in a commercial venture foreign to the express conditions attached to the use of the property and the charities to which it must be devoted under the stipulations in the several deeds.

The facts and circumstances here presented, it seems to me, reveal a proposal which is inconsistent and inharmonious with the kind of cautious and conservative management required in the administration of a charitable trust. The trust estate ought not to be so jeopardized. A court of equity should not sanction it.

STACY, C. J., and BARNHILL, J., concur in dissent.