THOMAS F. McCRAN, attorney-general,

*v.*

MYRTLE KAY et al.

[Submitted November 12th, 1921.   Decided December 3d, 1921.]

1. A testamentary trust for the establishing of a lodging-house for destitute women is a valid charitable trust.

2. A will providing that, on failure of a trust for the establishment of a lodging-house for destitute women, the trust fund should be used to establish and maintain a hospital for sick animals created a charitable trust.

3. A gift in trust for the establishment of a lodging-house for destitute women, or, if that proved a failure, for a hospital for sick animals —*Held*, to lapse, and the property to pass to the heirs-at-law and the next of kin because the property was insufficient for either purpose, either by using the testator's real estate or selling it and investing the proceeds, and the trust could not be administered by contracting with some existing association, as the will, by naming the visitors and matron or manager, and by requiring Protestant management, and by forbidding any payment to any established charity or any association with any humane society, precluded such contractual method of administering the trust.

On bill, &c.

*Messrs. Riker & Riker,* for the complainant.

*Mr. Thomas E. Fitzsimmons* and *Mr. Aaron Marder,* for the defendant Anna E. B. Linnett.

FOSTER, V. C.

Complainant seeks an accounting of the estate of Sophia B. Corey, deceased, and the appointment of a trustee to carry out the provisions of her will.

Miss Corey, a resident of Newark, died December 2d, 1912, and her last will and testament was duly admitted to probate, and letters testamentary were issued only to Nancie Kay, as the

other named executrix, testatrix's niece, Anna E. Baldwin Linnett, had by her marriage become disqualified as an executrix, under paragraph 8 of the will.

Testatrix left a personal estate that now amounts to about $4,000, and five parcels of real estate on Quitman street, Newark, valued at about $19,000.

The seventh paragraph of the will reads as follows:

"I order and direct my executrices to endeavor to establish a house of lodging at night for destitute women, without distinction as to age, color or religious belief, the said house to be under the control and direction of strictly Protestant management, and I order that no money be paid to any already established public charities. After a reasonable time should the establishment of a lodging-house at night for destitute women prove to be, in the judgment of executrices and advisors, with the same, a failure, a hospital for sick animals shall be established, free from all associations or partnership with the so-called 'Humane Society,' or its members.

"One of the houses forming a part of my real estate might, if deemed adequate, be used as a lodging-house for destitute women, or should attempt to maintain such a lodging-house be decided to be a failure, one of my houses might, if deemed adequate, be used, with whatever land belonged to said house, for a hospital for sick animals.

"Said hospital for sick animals shall be entirely under Protestant management, and for house of lodging at night for destitute women or said hospital for sick animals shall be employed as matron or helpers in any capacity, Protestant only."

Paragraph 8 of the will appointed the executrices and directed them "to associate with them as advisory committee Mrs. Benj. Stites and Miss Helen J. Elmer," and further requested "my executrices to select suitable persons to succeed them as executor or executrices after they, through removal, physical failure, or prospective death, shall be unable longer to perform duties."

Paragraph 9 reads:

"As matron of lodging-house at night for destitute women, or if such lodging-house fail of success, and hospital for sick animals be established, for either charity, I appoint as matron Elizabeth Haas."

Nancie Kay, as executrix, without consulting with, or being advised by, Mrs. Stites or Miss Elmer, attempted to carry out the trust provided for in the will, by using the premises Nos. 109-110 Quitman street as a lodging-house for destitute women,

under the management of Mrs. Haas as matron. This proved a failure, largely through lack of patronage and the cost of its maintenance, and it was abandoned; and no attempt was made to establish the hospital for sick animals.

On May 9th, 1920, Nancie Kay died without exercising the power to appoint her successor, and Myrtle Kay duly qualified as the executor of her will; and on September 25th, 1920, a decree *pro confesso* was entered herein against her and other defendants.

Upon the filing of the bill a receiver was appointed to care for Miss Corey's estate, and the receiver appraises its present value at about $23,000.

The defendant Mrs. Linnett, who is the sole heir-at-law and next of kin of Miss Corey, by her answer and counter-claim, contends that the trusts provided for by the seventh paragraph of the will are not charitable trusts, and are void under the rule against perpetuities; and she further claims that as these trusts are incapable of execution, either under the terms of the will or under the *cy pres* doctrine, the property held for the purposes of the trusts should be decreed to belong to her.

A charity in the legal sense has been repeatedly defined by the courts in England and in this country, and, as stated by Chief-Justice Beasley in *Thomson's Executors* v. *Norris, 20 N. J. Eq. 488* (at *p. 522*), the doctrine of the English court of chancery with regard to the mere classification of things which are and those which are not charities in the eye of the law, has been very generally recognized in this country.

In *Delwiller* v. *Hartman, 37 N. J. Eq. 347,* Chancellor Runyon quotes with approval the definition of a charity in the legal sense given by Mr. Justice Gray in *Jackson* v. *Phillips (Mass.), 14 Allen 556;* and under the terms of this definition, the trust created by the will, in the establishment of a lodging for destitute women, is a valid charitable trust.

And on the authority of the *University of London* v. *Yarrow, 44 Eng. Rep. 649 (1 DeG. J. 72),* in which the opinion of the lord-chancellor is directly in point, the provisions of the will directing that upon the failure of the lodging-house for destitute

women, the trust fund should be used to establish and maintain a hospital for sick animals, also created a charitable trust.

In this and other states gifts in trust to the Society for the Prevention of Cruelty to Animals, and to similar organizations, have repeatedly been held to be gifts for charitable purposes.

Notwithstanding that the trusts in question are regarded as charitable, the facts established on the hearing show the impracticability of their execution. This is apparent from the provisions of the will; and it is demonstrated by the fact that the income from the trust estate and from the patrons of the lodging-house was insufficient to maintain the lodging-house, and that in consequence this object of the trust had to be abandoned. Testatrix, apparently, anticipated that this result was possible and probable, and provided for it by the creation of the further, or alternative trust, to establish and maintain a hospital for sick animals.

From the provisions of the will it appears that testatrix, with an exaggerated idea of the value of her estate, contemplated the establishment and maintenance of the lodging-house, or hospital, on an elaborate and extensive scale, and considered her residence on Quitman street and the grounds surrounding it suitable for her purposes.

Her will was made in 1907 and possibly her estate was then much more valuable than it is now. The real estate now constituting the bulk of the trust fund has no income value, and must be sold and converted into money to provide any income, and also to avoid the continual drain upon the small personal estate to pay taxes, repairs and other fixed charges; and such a sale of the realty would, of course, prevent its use for either a lodging-house or a hospital; and if the realty is not sold and the small personal estate is used to repair and equip the buildings for the purpose of a lodging-house or hospital, the trustee, if appointed, will be left practically without income for the maintenance and management of the same.

It has been suggested that if the realty were sold and the proceeds invested, with the amount of the personal estate, a possible annual income of $1,000 or $1,200 would be derived therefrom

and that this income would enable the trustee to contract with some existing association, or establishment, or with a veterinarian, to maintain a hospital for sick animals, on at least a limited scale.

Aside from other objections to be mentioned, it appears from the testimony that the lodging-house could not be established and maintained in rented premises on $1,200, which is the largest amount of income the trust estate is likely to produce; and it also appears that this income, without any deduction for the expenses of administering the trust, would be insufficient to support any establishment entitled to be called a hospital for sick animals.

The evidence is that the wages or salary of an attendant for such a hospital, if the experiment were made to establish it under contract, would be at least $1,000, and that in addition there would be other expenses connected with such a hospital to be paid out of the income, and that under such an arrangement but very few sick animals could or would be cared for. And that in addition there would always be expenses to be provided for in connection with change of management and of location, and in the collection and transportation of sick animals.

But such contractual method of administering the trust would be contrary to the wishes and purposes of the testatrix, for she has directed that such a hospital shall be not only maintained but established, and, if possible, that this should be done in one of her houses and on the lands connected with the same; and to insure both the establishment and maintenance of said hospital, she has selected the visitors as well as the matron, or manager, for it; and she has further directed that the hospital shall be established and maintained "free from all associations or partnership with the so-called 'Humane Society,' or its members;" and she has further directed that the hospital shall be entirely under Protestant management, and that only Protestants shall be employed as matron or helpers in any capacity.

In view of the present condition and value of the trust estate, and the amount of net income likely to be received therefrom, coupled with the impracticability of adopting and enforcing, in apparent conflict with the terms of the will, a continuous con-

tractual method of administering the trust, that will annually care for any reasonable number of sick animals under Protestant management exclusively and that will always be free from all associations or partnerships of any so-called "Humane Society" or its members; and in the absence of any proof showing the possibility of executing either trust in any practical way, or in any way that will effectuate the intentions of the donor, it must be concluded that neither trust is possible of execution, in accordance with the terms of the will or under the *cy pres* doctrine.

As it is impossible to carry out the expressed general charitable purposes of the testatrix by the means specified by her, or by the use of other means or methods, a decree will be advised that the gift lapses, and as no other disposition has been made of the estate, it will go to Mrs. Linnett, as the sole heir-at-law and next of kin of the testatrix. *MacKenzie* v. *Trustees, &c., 67 N. J. Eq. 652; Brown* v. *Condit. 70 N. J. Eq. 440; Rector, &c., St. James Church* v. *Wilson, 82 N. J. Eq. 546; affirmed, 83 N. J. Eq. 124.*

The costs and allowances, if any, should be paid from the estate.