IN RE SWAYZE'S ESTATE. DEAN ET AL., RESPONDENTS, *v.* BENNETT, APPELLANT.

No. 8748

Submitted November 12, 1947. Decided January 26, 1948.

191 Pac. (2d) 322

Mr. Frank E. Blair, of Virginia City, for appellant.

Messrs. Corette & Corette and Mr. Kendrick Smith, all of Butte, and Mr. Arthur S. Humphrey, of Junction City, Kan., for respondents.

MR. JUSTICE METCALF delivered the opinion of the Court.

This is a proceeding to determine heirship under the holographic will of Mary Swayze. Her will is as follows:

"Sheridan, Montana, Nov. 27, 1944.

"I, Mary Swayze being of sound mind and memory do make and execute this my last will and testament, hereby revoking all wills by me previously made. I nominate and appoint Lyman H. Bennett, Jr., executor of this Will, and I direct that he cause my remains to be suitably buried, on the left hand side

as you come down the steps, from the 'Rock Haven' gate at the property where I reside. I give devise and bequeath unto Warren H. Merritt of Nome, Alaska my home ranch about 160 acres and all of my interests in the placer mining property, he to maintain my home and the surroundings thereof in their present condition in all respects as a memorial to me.

''I direct my executor to reduce sufficient of my estate to cash, such cash to be utilized for the erection and maintenance of a modern hotel at Virginia City, Montana, where no intoxicating liquors are to be sold at any time, said hotel to be maintained as a memorial to me, and I direct my executor to cause the formation of a corporation to be known as the Mary Swayze Memorial Hotel Company, to which corporation said hotel is to be conveyed, and by which it is to be maintained and operated.

''Mary Swayze.''

The trial court held that the last paragraph of the will was void for uncertainty. The court said:

''1. The hotel provision is so indefinite and uncertain and lacking in definiteness and certainty that the said executor could have no way of knowing or determining with any reasonable certainty what portion or part of said estate should be used and devoted to the purchase of a hotel site, or to the cost of the erection of a hotel building; or of the nature or cost of the furnishings of the building; and said executor would furthermore have no way of knowing or determining what part or portion of said estate should be separately, or otherwise, set aside and used for the purpose of the maintenance of said hotel when erected and furnished; and would have no way of determining what should be done with the proceeds or profits, if any, from the operation of said hotel.

''2. * * * The executor would have no way of determining what was the purpose and intent of the testatrix * * *

''3. * * * This Court has no way of determining what the intent of the testatrix was in respect thereto and could not

direct the executor as to the manner, method and means of carrying out said hotel provision. * * *

"9. The intended trust fails because of the failure to indicate the beneficiaries with reasonable certainty in that the beneficiary could not be deemed to be any group, class, or the public at large, in the absence of a charitable purpose, and the absence of a direction that the hotel shall not be run at a profit, and in the absence of a direction that less than reasonable prices shall be charged to all patrons. It is the duty of every trustee unless otherwise directed by the trust instrument to administer his trust profitably."

Judgment was entered distributing the property under the specific legacies and the remainder of the estate was ordered distributed as if decedent had died intestate. This appeal is from that judgment.

The general rule is that if a person makes a will he must declare his wishes in specific terms and not leave it in wide and uncertain terms for another to make his will for him. 69 C. J. 358. And when a trust is created by a will it is essential to its creation and validity that it be materially certain in its material terms and parts. 54 Am. Jur., Trusts, sec. 37.

Accordingly the subject matter of a trust must be designated with reasonable certainty from facts existing at the time of the creation of the trust. Sec. 7884, Rev. Codes of Montana 1935; Restatement of Trusts, sec. 76.

And the beneficiary must also be designated with reasonable certainty. Sec. 7884, Rev. Codes; 54 Am. Jur., Trusts, sec. 39; Restatement Trusts, sec. 124.

The trial court's conclusions of law above quoted point out the uncertainties in the hotel provision that violate these fundamental rules.

The intended trust was also held invalid because it was the trial court's opinion that the absolute power of alienation was suspended for a period greater than permitted by section 6705, Revised Codes.

Section 6705 provides: "The absolute power of alienation

cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except in the single case mentioned in section 6734.'' (Contingent remainder on a remainder in fee to be determined during the minority of the first remainderman.)

Section 6706, Revised Codes, declares that a future interest ''which, by any possibility'' violates the rule is void and continues, ''Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed.''

This rule against restraint of alienation is not a ''rule of construction,'' but a peremptory command of the law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in the will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be applied. In re Murphy's Estate, 99 Mont. 114, 124, 43 Pac. (2d) 233, quoting from Gray's Rule Against Perpetuities, 3rd Ed., sec. 629.

The company founded in accordance with the direction of the will is only directed to operate and maintain the hotel. No power to alienate the property is granted. Since no power whatsoever is granted the trustee to alienate the property, there is a violation of sections 6705 and 6706 and the interest created is void. In re Hartwig's Estate, Mont., 175 Pac. (2d) 178.

Appellant has placed some reliance on the case of Lawrence v. Prosser, 89 N. J. Eq. 248, 104 A. 772, 773, and quotes: ''Again, it is said that the bequest is void, because it violates the rule against perpetuities. *The will directs the money to be applied not for maintenance, but for construction and construction only.* To the case of such a bequest the law of perpetuities can have no application unless the construction be postponed to a period exceeding a life or lives in being and 21 years. There is a palpable fallacy under-lying much of com-

plainants' argument on this head. It is that, because a monument is likely to last beyond the legal period, the case is one of perpetuity. The same might be said of any structure likely to endure.'' (Emphasis added.) It is appellant's theory that since this is a memorial it is a valid trust.

The case cited is against the appellant's contention. The ▆▆ executor is directed by the will to ''reduce sufficient of my estate to cash * * * for the erection and maintenance of a modern hotel * * *'' the hotel ''to be maintained as a memorial'' and the executor is directed to form a corporation by which the hotel is to be ''maintained and operated.'' The distinction made in the cited case is pointed out in McCartney v. Jacobs, 288 Ill. 568, 123 N. E. 557, 4 A. L. R. 1124, where the annotator has collected authorities declaring that a provision for the erection of a memorial and the maintenance thereof is void while a provision directing the immediate expenditure of money for the erection of such a memorial is not void. See 1 Scott on Trusts, sec. 124.5.

Therefore if the intended trust be deemed a private one ▆▆ it fails for lack of certainty and because it would suspend the power of alienation for a period longer than lives in being.

However, special consideration is given to gifts for charitable ▆▆ purposes and in such cases the courts have recognized that it is open to the testator to leave to trustees to select the way in which the charitable purpose is to be applied. And where a charitable purpose is established the lack of certainty in the method of carrying out the trust will be remedied by the court by some scheme to accomplish the charitable intent of the testator. Also, a charitable trust is valid although its execution extends beyond the. period allowed by the rule against perpetuities or results in a suspension of alienation for a period of time greater than that permitted a private trust. Art. XIX, sec. 5, Mont. Const. But in order to establish the application of these two rules to the instant case, it must be first demonstrated that the trust to which they are applied is a charitable one. Section 374 of the Restatement on Trusts, says:

"A charitable trust is created if it includes a purpose 'the accomplishment of which is beneficial to the community.'"

The classic judicial definition of a charity was that of Lord Macnaghten in Income Tax Commissioners v. Pemsel (1891), A. C. 531 at 583: "Charity in its legal sense comprises four principal divisions; trusts for the relief of poverty; trusts for the advancement of education; trusts for the advancement of religion; and trusts for other purposes beneficial to the community not falling under any of the preceding heads."

A definition of charity frequently quoted in this country is that of Justice Gray in Jackson v. Phillips, 14 Allen, Mass., 539, 556: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

In its attempt to reconcile the confusion that has arisen around charitable trusts, the Restatement enumerates six charitable purposes: "(a) the relief of poverty; (b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; (f) other purposes the accomplishment of which is beneficial to the community." Sec. 368.

It is to be noted that Lord Macnaghten's definition, and the Restatement, declare that the trust is valid as a charitable trust if it includes a purpose "the accomplishment of which is beneficial to the community" and Justice Gray arrives at the same conclusion in different language.

Therefore the definitions in themselves are not of a great deal of benefit in applying the test as to whether or not

the creation of a hotel trust and the building of a hotel in Virginia City is a charitable purpose. The character of a trust as public rather than private is not determined by any sharply defined formula. Sec. 368, Restatement, Trusts, Comment b.. Each case must be determined on its own particular facts.

At the outset it must be remembered that while a charitable trust can be one whose purpose is beneficial to the community, every purpose beneficial to the community is not a charity. By simply reversing the statement the field is broadened so that many enterprises beneficial to the community in themselves and valuable in building the commercial or business welfare of members of the community would be classed as charities. In other words the benefit to the community is a necessary condition to every charitable trust but benefit standing alone is not enough to establish the trust as a charity.

This is illustrated by the line of cases discussed by Professor Austin W. Scott in 58 Harvard Law Review 548, in his article, ''Trusts for Charitable and Benevolent Purposes,'' where trusts for charitable and ''benevolent'' or charitable and ''liberal'' or ''worthy'' or ''philanthropic'' or ''humanitarian'' or ''deserving'' or ''public'' purposes have failed for uncertainty because the alternative ''benevolent'' or ''humanitarian,'' etc., purpose, while beneficial to the community and deserving of praise is not strictly charitable. See 163 A. L. R. 784 and Restatement of Trusts, section 398.

It is true that the modern trend of authority is to allow greater latitude in the application of the law of charitable uses and, as pointed out in the dissenting opinion's quotation from Ould v. Washington Hospital, 95 U. S. 303, 311, 24 L. Ed. 450, ''new discoveries in science, new fields and opportunities for human action, the differing condition, character and wants of communities change and enlarge the scope of charity.'' In accordance with that concept the court in Todd v. Citizens' Gas Company, 7 Cir., 46 F. (2d) 855, held that the establishment of a gas plant for the purpose of supplying light, heat and power

554

to the city created a charitable trust. Reliance was had on Justice Gray's definition quoted above.

. Under the same definition, an older case, Doughton v. Vandever, 5 Del. Ch. 51, declared that a bequest to the Philadelphia Water Works was not to a public charity. However, even if a public utility may be the basis for a public charity, it does not follow that the doctrine of charitable purposes could be extended to business enterprises which were not public utilities.

What is the type of benefit to the community that is at the same time charitable? Certainly where there is a direct and tangible benefit to each member of the community the trust would be valid. The trust for the establishment of the gas plant might be sustained under this proposition. Gifts for parks, public halls, recreation grounds, bridges, etc., are other examples of such trusts.

The difficulty is where the benefit is intangible and no one member of the community directly benefits but in a large sense the whole community is aided. The test suggested by section 374 of the Trusts Restatement is whether the purpose is "of a character sufficiently beneficial to the community as to justify permitting property to be devoted forever to their accomplishment * * *." In Comment (a) the Restatement says: "The question in each case is whether at the time when the question arises and in the State in which it arises the purpose is one the accomplishment of which might reasonably be held to be for the social interest of the community." Thus the purpose must be for the general happiness of the community, to promote patriotism, social welfare, public benefit. The benefit to an individual member of the community is intangible but the benefit to the community itself is tangible and definite.

If a trust for the creation and maintenance of a hotel is valid, because there is no hotel in Virginia City, then a trust for the creation and maintenance of a restaurant is also valid. And if intangible benefit to individuals is to be the sole test then a trust for the establishment of a creamery or a canning factory or a pulp mill can also be considered charitable because of the

indirect benefits that would inure to the residents as a result of the establishment of such industries.

We agree that the modern trend should be to encourage the establishment of charitable trusts. But the broad mantle of charity should not be stretched to cover such a private purpose as a hotel. Hospitals, colleges, research laboratories, art museums, churches, historical monuments, libraries, homes for the aged and indigent, yes and even public utilities can be construed to be charitable purposes. But to extend the meaning of charity to cover the establishment and maintenance of a hotel is to extend charitable purposes to such an extent that everything is included.

A hotel is a private business enterprise and ''it is not charity to aid a business enterprise.'' Cardozo, J., in Butterworth v. Keeler, 219 N. Y. 446, 114 N. E. 803, 804. Applying the test laid down in the Restatement, whether the purpose is of such benefit to the public that would warrant the people to devote the property to its use in perpetuity, it cannot be said that a hotel is a charity. Even assuming that Virginia City is without hotel facilities and recognizing, as we should, that it is a place of great historic importance to the people of Montana, a shrine for tourists of the state of Montana, and conceding that accommodations are needed by the public in carrying on the work of the courts in housing jurors and litigants and in caring for commercial travelers who make periodical visits to Virginia City, we cannot say that these purposes would warrant the setting aside of such a salutary rule as the rule against restraint of alienation, nor can we justifiably say that it would warrant the creation of a tax-free corporation to compete in the identical business with private corporations or private hotel owners.

If this is declared a charity, we are going to be faced with the contention that the estate is free from inheritance tax, that the corporation is exempt from property tax, and that the employees and trustees of the hotel so created are entitled to all the benefits we give employees of other charitable institutions,

such as schools, hospitals and museums. Strong as is the policy of the law to carry out the intent of the testator, it does not justify the extension of the law of charitable uses to declaring a purely private enterprise to be a charitable one solely because the establishment of such an enterprise would give an intangible benefit to the community.

The proposition has been ably stated in 2 Bogert, Trusts and Trustees, sec. 365: "The law might conceivably have declared charitable any trust which produced a widespread social result, even though it brought about other results not at all charitable. But the courts have not taken such a position. To have done so would have opened the door too wide. It would have led to the disguise of a private enterprise in the form of charities. The courts have refused to recognize as charitable a trust in a mixed private and public nature, or one which is essentially private but has certain collateral, incidental public advantages."

Respondents herein are 21 first cousins, next of kin, and the administrator of another first cousin, now deceased. On July 26, 1945, 19 of the respondents filed written appointments designating the attorneys of record as their counsel to represent them. On the same day, under the authority of section 10370, Revised Codes, the court made an order appointing the attorneys of record as the attorneys for the 19 heirs and also as attorneys for the other two first cousins, non-resident heirs.

On October 11, 1945, the hearing on the petition of one of the cousins, Edward R. Hansen, to ascertain and declare the rights of all persons interested in decedent's estate was set for the 14th day of December 1945. On that date, October 11, 1945, the administrator of the deceased cousin filed an authorization for the attorneys of record to appear in his behalf.

Section 10325 provides: "All persons appearing within the time limited must file their written appearance in person or through their authorized attorney, such attorney filing at the same time written evidence of his authority to so appear, * * * and the court or judge shall, after the expiration of the time

limited for appearing as aforesaid, enter an order adjudging the default of all persons for not appearing as aforesaid, who shall not have appeared as aforesaid.''

It is appellant's contention that respondents filed their appearances prematurely.

There is no merit in this proposition. The written authority of the respondents' attorneys was a matter of record in the case after July 26, 1945, and was never revoked. The attorneys authorized to appear did so on the day set for their appearance. The refiling of their written authority on December 14, 1945, would have been an idle act that the law does not require. Section 10325 requires that written evidence be filed at the same time if no written authority had previously been filed but the statute cannot be construed to mean that if the written authority is not filed on the precise day set for appearance the parties are in default.

The judgment is affirmed.

Associate Justices Choate and Gibson concur.

Mr. Chief Justice Adair (dissenting).

I dissent.

The will of Mary Swayze, entirely written, dated and signed by the hand of the testatrix herself, evidences the fact that it was made and executed at ''Sheridan, Montana, Nov. 27, 1944.''

It nominates and appoints as executor thereof Lyman H. Bennett, Jr., an able and learned member of the bar of this court, residing at Virginia City, Montana.

The last paragraph of the will directs the executor "to reduce sufficient of my estate to cash, such cash to be utilized for the erection and maintenance of a modern hotel at Virginia City, Montana, where no intoxicating liquors are to be sold at any time, said hotel to be maintained as a memorial to me.''

It directs the executor ''to cause the formation of a corporation to be known as the Mary Swayze Memorial Hotel Company.''

It directs that to such "corporation said hotel is to be conveyed and by which it is to be maintained and operated."

It is a matter of political history that Virginia City, the first incorporated town in Montana (January 1864) and the second territorial capitol of Montana, once boasted of "The Five Story Hotel" about whose glories and comforts every stagedriver sang on his way to the town but which, upon arrival, the expectant sojourner found to be a rambling structure built on five successive levels on a steep hillside, each level being but one story high.

The executor offered to prove that about the year 1937 Virginia City's only hotel burned or was razed since which time the town has been wholly without hotel facilities to accommodate the large number of visitors who are annually attracted because of Virginia City's great historical interest and because it is the county seat of Madison county.

Inspired by the intimate knowledge of the numerous charities of William Boyce Thompson, once Montana's wealthiest son, who was born and reared in Virginia City and who gave to it the Thompson-Hickman Museum and Free Public Library and to Yonkers, New York, as a memorial to his father and mother, the world famous Boyce Thompson Institute of Plant Research, is it at all strange that Mary Swayze should attempt to provide Virginia City with hotel facilities and thus improve and promote the welfare of the luckless wayfarer who otherwise would find himself a stranger in a strange land where neither food nor lodging would be available?

A charity has been defined to be a gift to a general use, which extends to the poor as well as the rich. It is not confined to mere almsgiving, or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man. New England Sanitarium v. Stoneham, 205 Mass. 335, 91 N. E. 385.

In Thornton v. Franklin Square House, 200 Mass. 465, 86 N. E. 909, 22 L. R. A., N. S. 486, it was held that property acquired, occupied and used as a home for working girls, who

paid for fuel, light, food, laundry and domestic services at prices as cheap or cheaper than such accommodations could be had elsewhere under similar conditions of respectability and comfort, was held and occupied for charitable uses.

In Thorp v. Lund, 227 Mass. 474, 116 N. E. 946, 948, Ann. Cas. 1918B, 1204, the court upheld as a charitable trust a fund provided by the widow of the distinguished violist Ole Bull to be devoted toward the erection in Norway of a suitable memorial to her late husband. The court there said: ''A gift dictated by a general benevolent purpose is to be liberally construed and, if reasonably possible, upheld as a valid charity, rather than declared void.''

In Shannon v. Eno, 120 Conn. 77, 179, A. 479, 490, the court construed a paragraph in the will of Anna J. E. Eno which read: ''I give the sum of two thousand dollars for the purpose of founding and supporting a Cattery, to be situated in or near Ansonia, for the care of homeless animals and boarders.'' In declaring such provision valid the court said: ''The intention of the testatrix in making the gift in the twentieth paragraph was obviously to afford care and protection to and alleviate the sufferings of that class of animals which by domestication contribute to comfort, pleasure, and well-being of man; and it is not questioned that such a gift is a proper charitable use. Minns v. Billings, 183 Mass. 126, 130, 66 N. E. 593, 5 L. R. A., N. S., 686, 97 Am. St. Rep. 420; In re Graves' Estate, 242 Ill. 23, 89 N. E. 672, 24 L. R. A., N. S., 283, 134 Am. St. Rep. 302, 17 Ann. Cas. 137; In re Coleman's Estate, 167 Cal. 212, 214, 138 Pac. 992, Ann. Cas. 1915C, 682; 66 A. L. R. 465, note. Nor are the terms of the gift in this paragraph too uncertain in themselves to constitute a valid trust. Mack's Appeal, 71 Conn. 122, [134] 135, 41 A. 242; Eliot's Appeal, 74 Conn. 586, 51 A. 558; Brinsmade v. Beach, supra [Brinsmade v. Beach, 98 Conn. 322, 336, 119 A. 233].'' See also McCran v. Kay, 93 N. J. Eq. 352, 115 A. 649.

''The territorial legislature of Montana in 1877, recognized

the validity of holographic wills by the enactment into law of what is now sections 6981 and 10031 of the Revised Codes. * * * "The law of this state expressly permits a person, without the assistance of an attorney at law, or any one else, to make a valid testamentary disposition of his property. The question is not whether attorneys and courts approve of holographic wills. The law of this state approves and for over sixty-six years has approved of such wills. Courts therefore have no right to apply a strict and unreasonable construction to such informal writings, and, by seizing upon immaterial technicalities, declare them invalid, thereby defeating not only the will of the deceased person, but also that of the legislature." In re Irvine's Estate, 114 Mont. 577, 139 Pac. (2d) 489, 494, 147 A. L. R. 882.

In my opinion Mary Swayze's will is valid and the judgment of the trial court holding the last paragraph thereof void for uncertainty should be reversed.

Mr. Justice Angstman (dissenting).

The particular portion of the will in question is the hotel provision reading: "I direct my executor to reduce sufficient of my estate to cash, such cash to be utilized for the erection and maintenance of a modern hotel at Virginia City, Montana, where no intoxicating liquors are to be sold at any time, said hotel to be maintained as a memorial to me, and I direct my executor to cause the formation of a corporation to be known as the Mary Swayze Memorial Hotel Company, to which corporation said hotel is to be conveyed and by which it is to be maintained and operated."

At the hearing appellant made the following offer to prove by the witness on the stand and other succeeding witnesses that since 1937 Virginia City has been without hotel facilities; that it is a county seat town and the district court of the Fifth Judicial District of the State of Montana holds terms of court there in law and equity; that the city of Virginia City and the immediate surrounding territory has from early days been of great historical interest and is annually visited

by large numbers of tourists; that the local hotel burned down in 1937 and that for some years previously the same had been operated to capacity. The said hotel was a twenty-five room structure and usually well filled and that the deceased was well acquainted with the foregoing; that to build a modern hotel of the size of the burned down hotel would cost more than the inventory value of the Swayze estate, but that a structure of about twenty or a twenty room modern hotel could .be built and equipped for a sum within the inventory value of the estate.''

The offered evidence was excluded. I think it was error to exclude this evidence. The offered evidence would have shown the type and size of hotel which testatrix had in mind at the time of making her will, because she evidently was referring to one suitable for a town the size of Virginia City and one that would adequately serve the community, based upon past experience, and would have shown the extent of the public interest in a hotel at Virginia City and in my opinion would have shown a sufficient interest to constitute the devise a charitable one.

A will is to be construed according to the intention of the testator. Sec. 7016. And ''in cases of uncertainty arising upon the face of a will, * * * the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations.'' Sec. 7017, Rev. Codes. Extrinsic evidence of the circumstances and conditions within the knowledge of testatrix at the time of executing the will is admissible to show the intent of testatrix. See note in 94 A. L. R., page 170; In re Clippinger's Estate, 75 Cal. App. (2d) 426, 171 Pac. (2d) 567; Richards v. Wilson, 185 Ind. 335, 112 N. E. 780. And that interpretation is to be adopted if possible which will prevent a partial intestacy. In re Spriggs' Estate, 70 Mont. 272, 225 Pac. 617.

It is not every uncertainty that invalidates a charitable trust. ''According to the later, more modern, and better view,

testamentary gifts to charities may be good although they involve uncertainties which would render a gift to an individual void." 10 Am. Jur., "Charities," sec. 82; and see In re Estate of Funk, 353 Pa. 321, 45 A. (2d) 67, 163 A. L. R. 780; 14 C. J. S., Charities, sec. 46.

"A gift by will to a charity of an unnamed amount of money or one which furnishes no means of ascertaining the amount of money or property to be devoted to that object is void for uncertainty. So long, however, as the amount that is to be devoted to charity is capable of definite ascertainment, although the exact amount is not fixed by the instrument creating the trust, there is no uncertainty in the subject matter." 10 Am. Jur., "Charities," sec. 86.

Charitable trusts are viewed with peculiar favor by the courts. Thomas v. Bryant, 185 Va. 845, 40 S. E. (2d) 487, 169 A. L. R. 257. In that case a devise of the residuary estate to the trustees for the purpose of creating and maintaining a home for indigent aged of the county was not invalid for indefiniteness. In that case the will expressly provided that the kind, size and plan of the home was left to the discretion and judgment of the trustees.

In the case of Souhegan National Bank v. Kenison, 92 N. N. H. 117, 26 A. (2d) 26, 28, a will directed the residue of the estate to be held "as a fund to be distributed both as to principal and interest for religious, charitable and relief purposes in any part of the world, in accordance with a suggestive memorandum which I have prepared and hereby make a part of this will." No such memorandum had been prepared. It was contended that the trust was void for indefiniteness but the court held otherwise.

In McCartney v. Jacobs, 288 Ill. 568, 123 N. E. 557, 4 A. L. R. 1120, it was held that a direction in a will that the executor procure markers for the burial lots of testatrix and her brother "at a cost of not less than $75 for each marker" was not indefinite and uncertain as leaving to the executor the uncontrolled power to dissipate the funds of the estate but

that the probate court had the power to control the amount of money expended for the markers.

In Field v. Drew Theological Seminary, C. C., 41 F. 371, 372, the court had before it a will in which the testator directed that the executors provide "a sum of money sufficient to educate in the Drew Theological College, in Madison, New Jersey, two young men for the ministry" and that "this is to be continued perpetually" was not too indefinite as to the amount of money needed to constitute a valid charitable trust. Likewise in that case as here the corporation to administer the trust was not in existence at the time of the testator's death but was thereafter created pursuant to the testator's direction.

In 14 L. R. A., N. S., 149, the author refers to Dundee v. Morris, 3 Macq. H. L. Cas. 134, Scott's Revised Rpts., Vol. 10, H. L., page 55, where it was held that a bequest for the establishment, in a named place, of a hospital for 100 boys, was not invalid because the testator did not specify any certain sum, or furnish any means of rendering certain how it was to be applied to the establishment of the hospital, since the number of boys being given, the size of the hospital required could be easily ascertained and its cost estimated. That the choice of the site and details of the work were not specified does not render the trust invalid for uncertainty. Lawrence v. Prosser, 89 N. J. Eq. 248, 104 A. 772.

There are cases supporting the view that a charitable gift of an unnamed amount of money is void for uncertainty if no means is furnished for ascertaining the amount of money or property intended to be devoted to that object. See note in 14 L. R. A., N. S., 147. Here the circumstances offered to be proven would have afforded some basis for determining the size of the hotel desired and hence the approximate cost thereof.

In Crerar v. Williams, 145 Ill. 625, 34 N. E. 467, 21 L. R. A. 454, the testator directed the executors to set aside so much of his estate as in their judgment was necessary and to pay from the income thereof all costs, charges and expenses of administra-

tion of the will and its trusts of which there were many, and gave the residue of his estate for the erection, creation, maintenance and endowment of a free public library. The court held that the charitable trust was not invalid for uncertainty. In that case too a corporation was directed to be thereafter formed to administer the trust. To the same effect is Franklin v. Hastings, 253 Ill. 46, 97 N. E. 265, Ann. Cas. 1913A, 135, and see 14 C. J. S., Charities, sec. 32; 10 Am. Jur., section 44, page 615.

Was the trust a charitable one? I think it was if we assume the existence of the facts offered to be proven. A charitable trust is created if it includes a purpose "the accomplishment of which is beneficial to the community." Restatement, Trusts, sec. 368.

The test is whether "at the time when the question arises and in the State in which it arises the purpose is one the accomplishment of which might reasonably be held to be for the social interest of the community." Restatement, Trusts, sec. 374, comment a.

"A trust to promote the happiness or well being of the members of the community is charitable. Thus, a trust to beautify a city, or to preserve the beauties of nature, or otherwise to add to the aesthetic enjoyment of the community, is charitable. So also, a trust to provide for public concerts or for community singing is a charitable trust. So too, a trust to provide fishing facilities for the inhabitants of a town is a charitable trust. A trust to provide public facilities for swimming and other sports is charitable. Some of these trusts can be supported on the ground that they tend to promote the health of the community (see sec. 372), or involve a form of education (see sec. 370); but it is sufficient that they promote the general happiness of the community." Comment f, Restatement, sec. 374, p. 1156.

In Scott on Trusts, section 374.10, it is said: "The promotion of the happiness and enjoyment of the members of a community is a charitable purpose. It is not material that the benefits are not limited to the poor. In the well-known case of Goodman v. Mayor of Saltash the House of Lords upheld a

prescriptive right in the free inhabitants of a borough to dredge for oysters during a certain season of the year. The court said that if there had been a grant trust to permit the inhabitants or a particular class of the inhabitants to dig oysters it would be a charitable trust which would not be invalid as a perpetuity.

"So also the erection or maintenance of a community building in a village to be used for the benefit of the inhabitants is a charitable purpose. A trust for the encouraging of choruses by the residents of a certain town is charitable.

"A trust is charitable where the purpose is to contribute to the aesthetic enjoyment of the community. Thus the courts have upheld a trust for the development of the Palisades along the Hudson river; a trust for promoting the permanent preservation of lands of beauty or historic interest; a trust to beautify a city by the planting and maintaining of shade trees; a trust to preserve a forest and wild lands intact as a park to which visitors shall be allowed access."

In Nixon v. Brown, 46 Nev. 439, 214 Pac. 524, 531, a deed of trust conveying a theatre building and lots upon which it was situated to trustees to hold and operate for the citizens of the town of Winnemucca, the income from which was to be used for maintenance and repairs, was a charitable trust. The court in that case pointed out that charitable trusts are the favorites in equity and then said:

"Viewed in the light of these decisions, and of many others, the purposes for which the trust was created must be held to be a public or charitable one. The theater, which was the subject of the gift, as appears from the record, was rather an elaborate one for a city whose population is small. It undoubtedly enabled the people of Winnemucca to attend many public occasions and public functions they otherwise could not. Again, it furnishes a means which the people of Winnemucca otherwise would not have had for attending plays, concerts, and other functions, thereby increasing to some extent their happiness and social welfare. If the trust is in other respects valid,

as required by law, we think the purpose for which it was created is and must be considered a public or charitable one.''

A trust to establish a community building is a charitable trust. New Jersey Title Guarantee & Trust Co. v. Smith, 90 N. J. Eq. 386, 108 A. 16; Shannonhouse v. Wolfe, 191 N. C. 769, 133 S. E. 93; Klein v. City of Bridgeport, 125 Conn. 129, 3 A. (2d) 675.

It has been held that a trust for the establishment and operation of a gas plant for the purpose of supplying light, heat and power to a municipality and its inhabitants constitutes a public charitable trust. This was so held in Todd v. Citizens' Gas Co. of Indianapolis, 7 Cir., 46 F. (2d) 855, 865. In that case the court said:

''It is also the claim of appellants that the establishment of a gas plant for the purpose of supplying light, heat, and power to the city and its inhabitants is not for a use recognized in law as proper for a public charitable trust. The definition given by Mr. Justice Gray in Jackson v. Phillips, 14 Allen, Mass. 539, 556, has been repeatedly quoted and applied:

'' 'A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.'

''It is easily seen that it is impossible to specify the innumerable objects or purposes for which a charitable trust may be created. The enforcement of charitable uses cannot be limited to any narrow and stated formula. It must expand with the advancement of civilization and the daily increasing needs of man. New discoveries in science, new fields and opportunities for human action, the differing condition, character, and wants

of communities change and enlarge the scope of charity. Indeed, it has been stated generally that 'a charitable use, where neither law nor public policy forbids, may be applied to almost any thing that tends to promote the well-doing and well-being of social man.' Ould v. Washington Hospital, 95 U. S. 303, 311, 24 L. Ed. 450.'' To the same general effect is in re Funk's Estate, supra, and the cases cited in the exhaustive note; Mills v. Montclair Trust Co., 139 N. J. Eq. 56, 49 A. (2d) 889.

And ''a trust to maintain a Young Men's or Young Women's Christian Association, maintaining a building offering to young people facilities for reading, exercise, social meetings, board and lodging at reasonable rates, is charitable.'' Sec. 374, Comment g, p. 1157, Restatement on Trusts. And a trust to provide an award to aid college students who made the lowest golf score is a charitable trust ''beneficial to the community.'' In re Fleming's Estate, Cal. App., 183 Pac. (2d) 295, 297. And a charitable trust does not cease to be such because its operation results in profits. Restatement, Trusts, sec. 376, comment d.

An added circumstance to be considered in determining whether a charitable trust was created is the fact that the hotel is to stand as a memorial to the deceased. There are cases holding that a gift for the erection of a monument to the memory of a prominent citizen constitutes a charitable trust. Lawrence v. Prosser, supra; Eliot v. Attwill, 232 Mass. 517, 122 N. E. 648.

In 10 Am. Jur., page 624, it is said: ''Although the founding of a public charity to perpetuate one's name may not come up to the abstract idea of a Christian charity, it is uniformly treated as a charity by courts of justice.''

It is generally held that a gift for the benefit of animals is a charity. 10 Am. Jur., Charities, sec. 76, p. 638. It seems to me that if providing a home for animals is a charity, then under some circumstances the same should be said of the construction and maintenance of a hotel which furnishes the comforts and conveniences of a home to human beings. I do not mean to say that a gift for the building and maintenance of a hotel in every city or town in the state would be a charitable trust. It is only

owing to the peculiar conditions in Virginia City at the time the will was made as attempted to be shown in the offer of proof that makes this a charitable trust and one peculiarly beneficial to the community in and around Virginia City.

My associates say that a hotel is a private business and that it is not a charity to aid a business enterprise. I think my associates lose sight of the fact that because of the conditions in Virginia City the hotel business (because of a total lack of hotel facilities) became and was affected with a public interest.

Also my associates fear the consequences of turning a charitable tax-free corporation loose to compete with a private corporation. There is here no element of competition presented. It was because there was no hotel in Virginia City for many years that caused the decedent to make the provision in the will which she did. The conditions existing when the will was drawn must be considered in construing the will and in determining whether they created a charitable trust.

A charitable trust is not subject to the rule against perpetuities. Art. XIX, sec. 5 of the Montana Constitution, and see Quinn v. Peoples Trust & Sav. Co., 223 Ind. 317, 60 N. E. (2d) 281, 157 A. L. R. 885.

I think the judgment should be reversed.

Rehearing denied March 31, 1948.