No. 14670

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN THE MATTER OF THE TRUST
CREATED UNDER THE WILL OF:

ROYALSTON HEYWOOD CRAM, a/k/a
Royalston H. Cram, and as
R. H. CRAM,

        Deceased.

---

Appeal from:  District Court of the Eighth Judicial District,
            Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Bottomly and Gabriel, Great Falls, Montana
        R. V. Bottomly argued, Great Falls, Montana

        Fredrick Sherwood, Helena, Montana

    For Respondent:

        Church, Harris, Johnson & Williams, Great Falls, Montana
        R. Keith Strong argued, Great Falls, Montana

        Cannon and Gillespie, Helena, Montana

    For Amicus Curiae:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Sheri Sprigg, Assistant Attorney General, Helena, Montana

---

        Submitted:  September 17, 1979
          Decided:  FEB 5 - 1980

Filed:  FEB 5 - 1980

_Thomas J. Kearney_
                 Clerk

<sup>M</sup>r. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Appellant Donna Bottomly appeals from a memorandum decision and order of the Cascade County District Court denying her petition in which she claimed to be a beneficiary under the trust of Royalston Heywood Cram; and granting Northwestern Union Trust Company's petition for instructions which resulted in a modification of the trust instrument.

Royalston Heywood Cram was a sheep rancher and resident of Cascade County. On March 30, 1948, he executed his Last Will and Testament. He died on January 13, 1954. His Will was admitted to probate on February 17, 1954. The parties do not dispute the validity of Cram's 1948 Will.

Cram's Will provided for a trust with the Union Bank and Trust of Helena, Montana, named as trustee. On March 9, 1955, the Northwestern Union Trust Company of Helena, Montana, successor to the named trustee in the Will, received the estate as trustee pursuant to the terms of the Will. The trustee has ever since that time administered the trust in accordance with the terms of the instrument.

The trust was created for the benefit of members of the Future Farmers of America of Montana and the 4-H Club of Montana. The purpose of the Cram trust, as recited in the instrument, is:

> ". . . to encourage and assist youths of the state
> interested in the woolgrowing and sheep raising
> industry of the state, and it is expected the
> leaders or heads of the two organizations will
> supervise and assist the various certified youths
> of their respective organizations, qualified to
> and receiving benefits, in the purchase of sheep
> to the best advantage to the end that these youths
> may get started in the sheep and wool raising
> industry.. . ."

The trust instrument contains detailed instructions relating to those youths who qualify as eligible recipients of

the trust funds, which creates the problem in the instant case. Those instructions are as follows:

> "This trust is to be perpetual and is created for the benefit of members of organizations known as the FUTURE FARMERS OF AMERICA OF MONTANA and the 4-H CLUB OF MONTANA. Persons receiving benefits under the trust shall be members, in good standing, of one of these organizations and bona fide residents of the State of Montana, residents of the County of Cascade to be excluded, however. They shall be boys between the ages of fourteen (14) and eighteen (18) years, both inclusive, of American born parents and such beneficiaries shall be of honest and upright character, worthy of such assistance, and without financial means of his own, and manifest an interest in the sheep raising business."

The instrument provides that on or about September 15 of each year, after $100 has accumulated, the trustee shall determine and notify the state leaders of FFA and 4-H of the number of $100 stipends available to members of those organizations. The FFA and 4-H Club leaders are employees of the State of Montana, and they perform their duties as leaders as a part of their official duties with the University system and the Office of Superintendent of Public Instruction.

The instrument then provides for the certification of names of members of the two organizations who are eligible to receive the stipends. That provision, which prompted the involvement in this proceeding of the Office of Public Instruction and the Montana Human Rights Division, is as follows:

> "Whereupon, such head or leader of the respective organizations shall certify to the Trustee the names of youths having the qualifications mentioned above, eligible to receive benefits hereunder, and, if the Trustee and its officers are satisfied, the Trustee will, thereupon, issue a check, drawn upon Heywood Foundation fund, payable to the head or leader of the Future Farmers of America in Montana and one of the members of this organization so certified for, in the sum of $100.00 for the purchase of sheep, and then issue a check to the head or leader of the State 4-H Club of Montana and one of the members of this organization so certified for the purchase of sheep.. . ."

-3-

In the fall of 1977, appellant Donna Bottomly, a member in good standing of FFA, applied for a Cram trust stipend. When the FFA refused to provide any further lists, the trustee petitioned the District Court for instructions. Donna Bottomly, the Montana Human Rights Commission and the Superintendent of Public Instruction all appeared and requested the District Court to reform the trust in order to eliminate the discriminatory provisions.

On October 24, 1978, the District Court entered a memorandum decision and order. The Court found that the discrimination involved in the Cram trust was clear, and that it was not the FFA or the 4-H Club or their respective state leaders who had created the discriminatory guidelines concerning the eligibility of prospective trust beneficiaries. The District Court found that Cram had established the discriminatory guidelines, and that he had clearly intended to do so. The District Court further found that the only involvement of the FFA and 4-H Club was that Cram had selected a limited group of favored members of those organizations to receive trust property.

The District Court modified the Cram Will by: (1) removing the provision that the state leaders of the FFA and the 4-H Club be notified of the number of $100 stipends to be made; (2) removing the provision requiring the state leaders to certify a list of names of eligible recipients to the trustee; and (3) removing the provision requiring the trustee to make the state leader a co-payee of the trust checks issued. The District Court instructed the trustee to continue its administration of the Cram trust, as modified. The District Court further instructed the trustee to seek the assistance of other persons from which to obtain the necessary list of names of eligible recipients under the trust, and to make them

co-payees on trust checks issued if the state leaders of the FFA and 4-H Club refused to furnish a list of names of eligible recipients.

The District Court denied appellant's petition, and granted Northwestern Union Trust Company's petition for instructions. Appellant Bottomly now appeals; the Montana Human Rights Commission and the Superintendent of Public Instruction have not appealed.

Appellant Bottomly raises three issues on appeal:

(1) Is the Cram Will, as modified by the District Court, discriminatory?

(2) Can the modified Cram trust be enforced in its present form?

(3) Can the Cram Will be reformed so as to be enforceable?

The first issue is whether the Cram Will, as modified by the District Court, is discriminatory. The parties agree that the modified Cram Will is discriminatory; however, the trustee contends that the discrimination is not unlawful, but permissible. We hold that the trust provision of the Cram Will as modified by the District Court is discriminatory. The language contained in the instrument clearly excludes female members of FFA or 4-H from becoming eligible recipients under the Cram trust.

The second issue is whether the modified Cram trust can be enforced in its present form. The District Court modified the original instrument, and the parties agree that the District Court possesses the power to apply deviation and cy pres principles in order to modify a Will. These powers were recognized, though not applied in the case of In Re Swayze's Estate (1948), 120 Mont. 546, 551, 191 P.2d 322, 325. Accordingly, this Court's scope of review is limited to an examination of the Cram trust as modified by the District Court.

-5-

The precise issue, as we perceive it, is whether "state action" is involved in the terms and operation of the modified Cram trust rendering it unlawful as a denial of equal protection of the law. Appellant contends that the FFA and 4-H Club are integral parts of the Montana educational system and as such they enjoy a wide variety of federal, state and local financing, assistance and participation. The appellant further contends that by virtue of the organizations' heavy involvement with, and dependence upon federal, state and local assistance, "state action" is present; and it is impossible for the organizations and their members to continue to participate in the benefits derived from the modified Cram trust because it is unlawful discrimination. The trustee contends that the District Court, in modifying the Cram trust, removed the FFA and 4-H organizations from the mechanics of the trust selection process. The trustee further contends that with the removal of the FFA and 4-H state leaders from the mechanics of the Cram trust, "state action" was also removed.

There is an essential dichotomy between discrimination by the State, which is prohibited by the Equal Protection Clause, and private discriminatory conduct, against which that clause erects no shield. Moose Lodge No. 107 v. Irvis (1972), 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627, 637; Burton v. Wilmington Parking Authority (1961), 365 U.S. 715, 721, 81 S.Ct. 856, 860, 6 L.Ed.2d 45, 50; Shelley v. Kraemer (1948), 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161, 1180. It has long been established that private conduct abridging individual rights does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Civil Rights Cases (1883), 109

-6-

U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835. In deciding whether the conduct under attack is governmental or private in nature, the United States Supreme Court has never adopted a precise, rigid test but has relied on a case-by-case approach. Lockwood v. Killian (1977), 172 Conn. 496, ____, 375 A.2d 998, 1002. Private conduct abridging individual rights does no violence to the Equal Protection Clause unless the state in any of its manifestations has been found to have become involved in such conduct to a significant extent. Burton v. Wilmington Parking Authority, supra, 365 U.S. at 722, 81 S.Ct. at 860, 6 L.Ed.2d at 50; Kotch v. Pilot Comm'rs (1947), 330 U.S. 552, 556, 67 S.Ct. 910, 912, 91 L.Ed. 1093, 1096. It is only when the State "so far" insinuates itself into a "position of interdependence" that it becomes a "joint participant" in the challenged activity or where private conduct becomes "so entwined" with governmental policies that a constitutional violation occurs. Evans v. Newton (1966), 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373, 375; Burton v. Wilmington Parking Authority, supra, 365 U.S. at 725, 81 S.Ct. at 862.

In First National Bank of Kansas City v. Danforth (Mo. 1975), 523 S.W.2d 808, cert.den. 95 S.Ct. 1999, 2424, the Missouri Supreme Court held that there was no invidious discrimination or state action where Homer McWilliams established the "McWilliams Memorial Hospital Trust" and directed that the net income from the trust be used annually for the maintenance, support and care of sick and infirm patients "born of white parents in the United States of America." McWilliams was a private individual; the corpus of the trust was derived solely from his private funds; and the trustee was a privately owned bank. The Court determined that no public body was involved, and found no entwinement by the State. The Court held there was no state action and accordingly no denial of equal protection.

-7-

In Shapiro v. Columbia Un. Nat. Bk. & Tr. Co, (Mo. 1978), 576 S.W.2d 310, Victor Wilson established a private charitable trust to assist deserving resident "boys" in obtaining university educations. A female law student brought an action alleging that she was denied an opportunity to apply for and be considered for financial aid from the trust established by Wilson. The University of Missouri at Kansas City, a public institution, accepted and processed the applications of prospective recipients for financial aid from the Wilson trust. Agents of the University nominated qualified male students and forwarded those names to a private trustee who approved the names of the male students and then awarded the scholarship funds. The private trustee had the ultimate and final power to determine which qualified boys would finally be awarded scholarship funds. The Missouri Supreme Court determined that the participation by the agents of the State University was not of such a significant extent in any of its manifestations or so entwined with private conduct that state action resulted. In Shapiro, a private individual established a trust with his private funds, appointed a bank as private trustee, established in his will a procedure by which the recipients of the trust funds would be selected, and the private trustee had the final power to approve the selection of trust fund recipients. The Court held that neither the Equal Protection Clause nor Civil Rights Act were violated, affirming the trial court's dismissal of the female law student's petition.

From the principles discussed in the authorities summarized above, and from all the facts and circumstances as developed in this particular case, we cannot conclude that there is "state action" involved in the modified Cram trust.

-8-

The intent of Cram to provide stipends to boys between the ages of 14 and 18 is clear and unambiguous. The District Court modified the Cram trust so as to remove the FFA and 4-H Club state leaders from the mechanics of the trust. The District Court modified the Cram trust as nearly in conformity with the intent of the testator as was practicable. With the removal of the FFA and 4-H Club state leaders, "state action" is no longer involved.

Cram established a private trust for the benefit of deserving boys to encourage and assist them so that they could get a start in the sheep and wool raising industry. Cram was a private individual, established the trust with his private funds, appointed a bank as private trustee, and established in his Will a procedure by which the recipients of the trust funds would be selected. Under the modified Cram trust, the FFA and 4-H Club organizations have no involvement in the operation of the trust nor in the beneficiary selection process. The modified Cram trust requires the private trustee to obtain the names of eligible recipients, select the beneficiaries, and to award the stipends. The important distinction is that the modified Cram trust requires the private trustee to award stipends to <u>individual</u> <u>boys</u> who are members of either the FFA or 4-H Club, and not to the organizations as entities. The fact that the modified Cram trust requires eligible recipients to be FFA or 4-H Club members does not in our opinion rise to the level of "state action." Mere membership and participation in FFA and 4-H Club by eligible boys does not constitute the requisite entwinement between the state and private conduct from which "state action" results.

We hold that the modified Cram trust is enforceable in its present form.  A private person has the right to dispose of his money or property as he wishes and in so doing may lawfully discriminate in regard to the beneficiaries of his largess without offending the equal protection clause as long as the State and its instrumentalities are not involved, and unless the trust is unlawful, private trusts are to be encouraged.  Our resolution of the second issue renders consideration of the third issue unnecessary.  Affirmed.

_____
                Chief Justice


We Concur:

_____


_____
            Justices

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.