LONA ROTEN v. STATE OF NORTH CAROLINA

No. 7023SC350

(Filed 15 July 1970)

**Deeds § 16—  estate on condition subsequent — deed states purposes for which property to be used**

  A deed conveying property to the State and setting forth the purposes for which the property should be used, but which contains no reverter or reentry clause, does not create an estate on condition subsequent but conveys an absolute fee to the State.

APPEAL from *Armstrong, J.,* March 1970 Civil Session, WILKES Superior Court.

This action was brought by Lona Roten (Roten), under the authority of G.S. 41-10.1, against the State of North Carolina in which she seeks to have the court declare her the owner in fee simple of a certain 140 acre tract of land in Wilkes County known as Rendezvous Mountain. The heirs of T. B. Finley executed and delivered a Quitclaim Deed to Rendezvous Mountain to Roten on 8 May 1967, said deed being the basis of plaintiff's claim to the said property. The State asserts its claim to this property under a deed dated 4 December 1926 from T. B. Finley and his wife recorded in Deed Book 142, at page 453, in the Office of the Register of Deeds of Wilkes County, North Carolina, said deed being as follows:

"*WARRANTY DEED*

STATE OF NORTH CAROLINA

WILKES COUNTY

THIS DEED, Made this the 4th day of December, 1926, by and between T. B. Finley and wife, C. L. Finley, of Wilkes County, State of North Carolina, parties of the first part, to the State of North Carolina, party of the second part,

Witnesseth: That Whereas, during the Revolutionary War, Wilkes County, North Carolina, set [sic] 225 picked soldiers from Rendezvous Mountain to the Battle of Kings Mountain under the command of Col. Benjamin Cleveland and Captain (Afterwards General) William Lenoir, and nine other captains.

And Whereas, from this point Wilkes County furnished a larger number of troops in winning the Battle of Kings Mountain than any other county in the present State of North Carolina.

And Whereas, the Battle of Kings Mountain was the deciding battle in the freedom of the colonies.

And Whereas, the ten companies of Wilkes County were assembled at Rendezvous Mountain and the 225 men were selected and started on the March to join the other patriots at Quaker Meadows in Burke County, North Carolina.

And Whereas, Rendezvous Mountain was the meeting and training place of the soldiers during the Revolutionary War.

And Whereas, T. B. Finley desires to perpetuate the historic importance of Rendezvous Mountain and make it a patriotic schrine [sic] where the people of North Carolina, together with the hundreds of thousands of descendants of these soldiers scattered over practically all of the States in the Union, their friends and tourists generally, will visit as they pass through this part of the State and this [sic] aid in the permanent advertisement of our State.

Now Therefore, the said T. B. Finley and wife, C. L. Finley in consideration of the purposes herein expressed have bargained and sold, and by these presents do bargain, sell and convey to the State of North Carolina, party of the second part, a certain parcel or tract of land situated in Wilkes County, North Carolina, and known as the Rendezvous Mountain land.

'Beginning at the Southwest corner of this boundary on a pine stump definitely located by marked witness trees, being the corner between the lands of T. B. Finley on the north and Ervin McNeil on the south, about 100 yards west of the top of the ridge thence north 9 degs. west 40 poles to a stake, thence north 44 degs. west 27 poles to a chestnut oak, thence north 38 degs. west 62 poles to a small dogwood about 2 poles west of Owen Springs, thence north 7½ degs. west 82 poles to a stake, witnessed by two chestnut oaks, small chestnut oak west, large chestnut oak southeast, this line passes by three gums on the ridge 11 poles from the dogwood, thence north 73½ degs. east 68 poles to a chestnut oak, (not located), thence north 73½ degs. east 61 poles to a large chestnut oak on the ridge, well defined, thence south 3½ degs. east 56 poles to a hickory, well defined, thence south 8 degs. west 19 poles to a persimmon, not definitely located, thence S 20 degs. east 31 poles to a mulberry near the branch in the corner of fence, thence north 80 degs. east 5 poles to a stake, thence south 42 poles to a dogwood, not clearly defined, thence south 8½ degs. east 71 poles to a white pine tree, well defined, thence south 82½ degs. west 76 poles to the beginning. Containing 140 acres, more or less.'

To Have and to Hold, the above described land and premises and the appurtenances thereto belonging to the said State of North Carolina, upon the following trusts and stipulations, to-wit:

(1) That the highest peak on said property, known as Rendezvous Mountain, with its surroundings, shall be used by the Daughters of the American Revolution, for the purpose of erecting a monument and placing thereon a bronze tablet containing the names of the 225 soldiers above mentioned, and for the purpose of utilizing the same as a park and preserving the primeval forest of oak, poplar, chestnut, hickory, maple, linn, cucumber and a variety of pines, together with the dogwoods, rhododendron, laurel, azalea and other floral growth, and beautify the coves, springs and branches, where tourist camp sites may be constructed in order that the entire development may be a patriotic inspiration to all the people of the State, and enjoyed by them and the tourists.

(2) That the second highest peak be held in trust by the State for the purposes aforesaid, and for the further purpose of erecting thereon a summer capitol or club house for the benefit of all State officials.

(3) That the third highest peak on said property be held in trust by the State for the Daughters of the American Revolution on which to erect a club house as a summer Rendezvous for their entire organization.

(4) That the State hold all said property, not otherwise utilized as above stated, for forest demonstration, showing the public the necessity of forest conversation [sic] and the success of reforestation.

(5) In order that this purpose may be accomplished and that the public especially the school children and tourists, may become acquainted with the history of this section and become enthused with the patriotic aroma of this historic spot, and appreciate the spendid [sic] views over the large, vaired [sic] and attractive section, it is desired that the State officials and all other broad minded, patriotic citizens use their influence in securing the passing of a bill by the present Legislature to insure sufficient funds to build a first class road from the Boone Trail Highway #60, to this property.

And, the said T. B. Finley and wife, C. L. Finley, covenants to and with the State of North Carolina, that they are seized of

said premises and have a right to convey same in fee simple, that same are free from all encumbrances and that they will warrant and defend the title to same against the claims of all persons whatsoever. This deed is executed and title is received under Consolidated Statutes, Section 6124.

IN TESTIMONY WHEREOF, we have hereunto affixed our hands and seal, the day and year above written.

T. B. Finley,     Seal.

C. L. Finley,     Seal."

On 9 March 1970 the State, by written motion, moved for a summary judgment pursuant to G.S. 1A-1, Rule 56(b), Rules of Civil Procedure.

The State's motion for a summary judgment was supported by the following exhibits: (1) A document citing the power vested in the State to acquire land as a State forest, which document states that such gifts must be absolute and unconditional; (2) an excerpt from the Second Biennial Report of the Department of Conservation and Development of the State of North Carolina describing plans made in connection with the property in question; (3) an excerpt from the Third Biennial Report of the Department of Conservation and Development indicating an intention by that department to use the land in question for experimental forestry; and (4) certain stipulations entered into between the parties to the present action. The plaintiffs also submitted exhibits to the court including a letter from Attorney General Harry McMullan, two letters from Thomas C. Ellis, Superintendent of State Parks, and an excerpt from the Minutes of the Council of State on 19 August 1954 indicating that the State intended to reconvey this property to the heirs of T. B. Finley. After considering the pleadings, exhibits of both parties, briefs and argument of counsel, Judge Armstrong on 10 March 1970 allowed defendant's motion, and entered a summary judgment dismissing plaintiff's action. To the entry of the summary judgment, the plaintiff excepted and gave notice of appeal to the North Carolina Court of Appeals.

*Wicker, Vannoy and Moore, by J. Gary Vannoy, for plaintiff appellant.*

*Robert Morgan, Attorney General, and Rafford E. Jones, Staff Attorney, for the State.*

HEDRICK, J.

G.S. 1A-1, Rule 56(b), Rules of Civil Procedure, provides: "A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought, may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

G.S. 1A-1, Rule 56(c), Rules of Civil Procedure, establishes the procedure to be followed by the court when considering a motion for summary judgment as follows: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

In the instant case we hold that the court properly allowed the defendant's motion for a summary judgment.

The appellants argue in their brief that the deed from T. B. Finley and wife to the State of North Carolina is not absolute in that it contains conditions subsequent which render it unacceptable. G.S. 113-34 provides:

> "The Governor of the State is authorized upon the recommendation of the Board of Conservation and Development to accept gifts of land to the State, the same to be held, protected and administered by said Board as State Forests, and to be used so as to demonstrate the practical utility of timber culture and water conservation, and as refuges for game. Such gifts must be absolute except in such cases as where the mineral interest on the land has previously been sold."

The State on the other hand contends that the deed is absolute for that the language contained therein merely expressed the wishes of the grantor and the purposes for which the conveyance was made.

A careful examination of the deed from T. B. Finley and his wife to the State of North Carolina shows that it contains many clauses whereby the grantor expressed his desires that certain things be done upon the property by the State.

In Hall v. Quinn, 190 N.C. 326, 130 S.E. 18 (1925), we find the following language:

> "An estate on condition expressed in the grant itself is where an estate is granted, either in fee simple or otherwise, with an express qualification annexed whereby the estate granted shall either commence, be enlarged, or be defeated, upon performance or breach of such qualification or condition; and a condition

subsequent operates upon an estate already created and vested, rendering it liable to be defeated if the condition is broken. 2 Bl., 154 . . . .

". . . A clause in a deed will not be construed as a condition subsequent unless it expresses in apt and appropriate language the intention of the parties to this effect (*Braddy v. Elliott*, 146 N.C., 578) and a mere statement of the purpose for which the property is to be used is not sufficient to create such condition. (cites omitted). In *Rawson v. School District*, 7 Allen, 125, *Chief Justice Bigelow*, in a discussion of the question, made use of the following language, which we may adopt as applicable in the present case: 'We believe there is no authoritative sanction for the doctrine that a deed is to be construed as a grant on a condition subsequent solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used, where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature general and public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled. . . .'"

After carefully examining the deed in the present case, it is our opinion that the language contained therein does not create an estate on condition subsequent. The language used by our Supreme Court in *Lassiter v. Jones*, 215 N.C. 298, 1 S.E. 2d 845 (1939), best sums up our decision:

"The deed does not create an estate on condition subsequent for the reason that nowhere in the deed is there a reverter or reentry clause. There is no language in the deed and no intention can be gathered from it that a reversionary interest exists and the grant is limited. There is no language in the deed that can be construed as a forfeit, that the property is either transferred to another or reserved by the original grantor."

Although the appellant has brought forward other assignments of error in this appeal they are contingent upon the finding in regard to the quality of the deed. Since it is our decision that the deed in the present case is absolute, the other assignments of error are overruled.

The summary judgment dated 10 March 1970 dismissing plaintiff's action is

Affirmed.

Brock and Britt, JJ., concur.